STATE OF NORTH CAROLINA v. WILLIAM ANTHONY HEARST

No. 684PA01

(Filed 16 August 2002)

**Probation and Parole; Sentencing— probation revocation— activation of suspended sentence—time served credit for attending IMPACT**

The trial court erred in a probation violation case activating a suspended sentence of six to eight months by refusing to credit the eighty-one days defendant spent attending the Intensive Motivational Program of Alternative Correctional Treatment (IMPACT), and the case is remanded because: (1) N.C.G.S. § 15-196.1 allows credit for commitment to or confine-

ment in a state or local correctional, mental, or other institution; (2) defendant's decision to either attend IMPACT or be sentenced to a longer period of incarceration cannot be found to be voluntary; (3) the conditions at IMPACT resembled imprisonment even though there are no locked gates or fences; and (4) trainees had no control over any daily activities while at IMPACT except for thirty minutes a day, and a defendant placed on house arrest or one required to visit a probation officer has no such restrictions.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 147 N.C. App. 298, 555 S.E.2d 357 (2001), affirming a judgment entered 10 August 2000 by Winner, J., in Superior Court, Buncombe County. Heard in the Supreme Court 15 May 2002.

*Roy Cooper, Attorney General, by Christopher W. Brooks, Assistant Attorney General, for the State.*

*William H. Leslie, Assistant Public Defender, for defendant-appellant.*

*N.C. Prisoner Legal Services, Inc., by Kari L. Hamel and Susan H. Pollitt, amicus curiae.*

LAKE, Chief Justice.

On 7 June 1998, defendant, William Anthony Hearst, was indicted for felony possession with intent to sell and deliver a controlled substance. He was also indicted for the misdemeanors of resisting a public officer, assault on a government official, no operator's license, and hit and run property damage. On 13 July 1999, defendant pled guilty to the charges. The trial court determined that defendant's prior record level was II and sentenced defendant in the presumptive range of six to eight months. The trial court suspended defendant's sentence, placed him on supervised probation for sixty months, and assigned him to the Intensive Supervision Program for twelve months.

On 11 August 1999, defendant's probation officer filed a probation violation report. On 26 August 1999, the trial court modified defendant's terms of probation and ordered him to attend the Intensive Motivational Program of Alternative Correctional Treatment (IMPACT). Defendant spent eighty-one days at IMPACT and successfully completed the program on 18 November 1999. Defendant's pro-

bation officer filed two more violation reports, on 21 February and 29 February 2000. On 10 August 2000, the trial court ordered that defendant's probation be revoked and that the suspended sentence of six to eight months be activated. Pursuant to N.C.G.S. § 15-196.1, defendant requested both the eighty-one days spent at IMPACT and twenty-five days spent in prior confinement for the charges be credited against his sentence. The trial court allowed the twenty-five days' credit but denied credit for the eighty-one days.

Defendant appealed to the Court of Appeals, which affirmed the trial court's denial of credit toward defendant's activated sentence for the eighty-one days spent at IMPACT. Defendant subsequently filed a notice of appeal with this Court based upon a substantial constitutional question pursuant to N.C.G.S. § 7A-30(1) and a petition for discretionary review pursuant to N.C.G.S. § 7A-31(c). On 31 January 2002, this Court dismissed *ex mero motu* defendant's notice of appeal but allowed his petition for discretionary review.

In defendant's first assignment of error, he contends the Court of Appeals erred in affirming the trial court's denial of credit toward defendant's activated sentence for the eighty-one days spent at IMPACT. Specifically, defendant argues that he was "committed to or confined in a state or local correctional, mental or other institution" while at IMPACT and that he was therefore entitled to the credit. *See* N.C.G.S. § 15-196.1 (2001). We agree.

N.C.G.S. § 15-196.1, titled "Credits Allowed," is the statute which controls the trial court's application of credit for time served in sentencing defendants upon probation revocation. This statute provides:

> The minimum and maximum term of a sentence shall be credited with and diminished by the total amount of time a defendant has spent, *committed to or in confinement in any State or local correctional, mental or other institution* as a result of the charge that culminated in the sentence. The credit provided shall be calculated from the date custody under the charge commenced and shall include credit for all time spent in custody pending trial, trial de novo, appeal, retrial, or pending parole, probation, or post-release supervision revocation hearing: Provided, however, the credit available herein shall not include any time that is credited on the term of a previously imposed sentence to which a defendant is subject.

N.C.G.S. § 15-196.1 (emphasis added).

**STATE v. HEARST**

[356 N.C. 132 (2002)]

In *State v. Farris*, 336 N.C. 552, 444 S.E.2d 182 (1994), this Court interpreted N.C.G.S. § 15-196.1 in regard to whether time served as a special condition of probation should be credited against a suspended sentence activated upon revocation of probation. The trial court in that case placed the defendant on special probation pursuant to N.C.G.S. § 15A-1351 with an active sentence of ninety days. *Id.* at 553, 444 S.E.2d at 183. N.C.G.S. § 15A-1351 allows a trial court to order a defendant to submit to a period or periods of imprisonment in a local confinement facility or in the custody of the Department of Correction as a condition of special probation. N.C.G.S. § 15A-1351(a) (2001). This Court rejected the State's argument that imprisonment imposed as a condition of special probation is like any other probation condition and thus should not be credited against an activated sentence. *Farris*, 336 N.C. at 555, 444 S.E.2d at 184. In *Farris*, we concluded that the language of N.C.G.S. § 15-196.1 demonstrated "the legislature's intention that a defendant be credited with all time defendant was in custody and not at liberty as the result of the charge." *Id.* at 556, 444 S.E.2d at 185.

The State contends, in the instant case, that defendant was not "committed to or confined" while in IMPACT and thus was not entitled to credit. Specifically, the State argues that statutory changes made to the IMPACT program in December 1998 demonstrate the legislature's intent that the IMPACT program not be a period of confinement or imprisonment. The State further contends that based upon this Court's opinion in *Farris*, the key issue is whether defendant was "in custody" while in IMPACT. According to the State's argument, the nature of the program itself, and defendant's testimony at his probation violation hearing, demonstrate he was not "in custody" and therefore was not entitled to jail credit.

N.C.G.S. § 15A-1343(b1) lists special conditions of probation. One of the special conditions of probation includes the IMPACT program. *See* N.C.G.S. § 15A-1343(b1)(2a) (2001). Under the original language in N.C.G.S. § 15A-1343(b1), a defendant ordered to attend IMPACT must "submit to a period of confinement in a facility operated by the Department of Correction for a minimum of 90 days or a maximum of 120 days under special probation . . . with the Intensive Motivational Program of Alternative Correctional Treatment." N.C.G.S. § 15A-1343(b1)(2a) (amendment effective 1 December 1998).

In a section of the Operations and Capital Improvement Appropriations Act of 1998 titled "Convert IMPACT to Residential

Program," the North Carolina General Assembly amended the IMPACT program. Act of Oct. 30, 1998, ch. 212, sec. 17.21, 1997 N.C. Sess. Laws 937, 1,200 (amending N.C.G.S. §§ 15A-1343(b1) and 15A-1343.1). The amended version of N.C.G.S. § 15A-1343(b1)(2a) requires a defendant to "[s]ubmit to a period of residential treatment" in the IMPACT program, rather than "a period of confinement." The remainder of the statute did not change in any substantial form.

The legislature also amended N.C.G.S. § 15A-1343.1, which sets out criteria for selecting and sentencing defendants to IMPACT. *Id.* The amendment added language stating that IMPACT "shall be a residential program" as defined by N.C.G.S. § 15A-1340.11(8). This statute defines "residential program" as a program where a defendant "is *required* to reside in a facility for a specified period and to participate in activities such as counseling, treatment, social skills training, or employment training, conducted at the residential facility or at other specified locations." N.C.G.S. § 15A-1340.11(8) (2001) (emphasis added).

On appeal, the Court of Appeals agreed with the State and concluded that the "General Assembly's action in converting IMPACT to a residential program . . . acknowledged that participation in IMPACT is a lesser sanction than commitment to or confinement in a state institution." *State v. Hearst,* 147 N.C. App. 298, 302, 555 S.E.2d 357, 360 (2001). In reaching this determination, the Court of Appeals noted that it recently considered N.C.G.S. § 15-196.1 in relation to house arrest and held that time spent under house arrest does not constitute confinement and is not entitled to credit. *Id.* at 301, 555 S.E.2d at 359 (citing *State v. Jarman,* 140 N.C. App. 198, 206, 535 S.E.2d 875, 880 (2000)). The Court of Appeals also found that defendant was "no more entitled to credit for time spent in the IMPACT program than he is for time spent during required visits with his probation officer." *Hearst,* 147 N.C App. at 303, 555 S.E.2d at 361. Therefore, based upon the above determinations, the Court of Appeals held that the IMPACT program was not "sufficiently incarcerative as to be 'custodial' " and that defendant was not entitled to credit against his active sentence. *Id.* We disagree.

" 'Criminal statutes are to be strictly construed against the State.' " *State v. Raines,* 319 N.C. 258, 263, 354 S.E.2d 486, 489 (1987) (quoting *State v. Glidden,* 317 N.C. 557, 561, 346 S.E.2d 470, 472 (1986)). "The intent of the legislature controls the interpretation of a

statute." *State v. Green*, 348 N.C. 588, 596, 502 S.E.2d 819, 824 (1998), *cert. denied*, 525 U.S. 1111, 142 L. Ed. 2d 783 (1999). "Words in a statute generally must be construed in accordance with their common and ordinary meaning, unless a different meaning is apparent or clearly indicated by the context." *Raines*, 319 N.C. at 262, 354 S.E.2d at 489 (citing *State v. Koberlein*, 309 N.C. 601, 605, 308 S.E.2d 442, 445 (1983)). In addition, in *Raines*, this Court stated the following:

> "The object in construing penal, as well as other statutes, is to ascertain the legislative intent. . . . The words must not be narrowed to the exclusion of what the legislature intended to embrace. . . . When the words . . . include various classes of persons, there is no authority which would justify a court in restricting them to one class and excluding others, where the purpose of the statute is alike applicable to all. The proper course in all cases is to adopt that sense of the words which best harmonizes with the context, and promotes in the fullest manner the policy and object of the legislature. The rule of strict construction is not violated by permitting the words of [a] statute to have their full meaning, or the more extended of two meanings, . . . but the words should be taken in such a sense, bent neither one way nor the other, as will best manifest the legislative intent."

*Raines*, 319 N.C. at 263, 354 S.E.2d at 489-90 (quoting *United States v. Hartwell*, 73 U.S. 385, 395-96, 18 L. Ed. 830, 832-33 (1867)).

> "The canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose. . . . Nor does it demand that a statute be given the 'narrowest meaning'; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers."

*Raines*, 319 N.C. at 263-64, 354 S.E.2d at 490 (quoting *United States v. Brown*, 333 U.S. 18, 25-26, 92 L. Ed. 442, 448 (1948)).

Although the legislature changed the IMPACT program's designating caption and terminology from "confinement" to submission to "residential treatment," the 1998 amendments did not make any substantive changes to the program itself. While we acknowledge that the wording used in the title of an act can provide useful guidance, we hold that this change in terminology is merely cosmetic and does not clearly demonstrate a legislative intent that the IMPACT program should not qualify for credit under N.C.G.S. § 15-196.1.

We thus turn our analysis to whether defendant's time in IMPACT constitutes confinement under N.C.G.S. § 15-196.1. After interpreting the plain meaning of N.C.G.S. § 15-196.1 and based upon our decision in *Farris*, we conclude that defendant was "in custody and not at liberty" and therefore was "in confinement" while at IMPACT.

Based upon information provided in the September 2000 Department of Correction's IMPACT brochure, the Department of Correction's Boot Camp began in Hoffman, North Carolina, with a ninety bed facility on 30 October 1989. In 1993, the General Assembly established a one hundred eighty bed facility in Morganton, North Carolina, now known as "IMPACT West." The General Assembly also approved the expansion of the program in Hoffman to a one hundred eighty bed facility, now known as "IMPACT East." The stated mission of IMPACT in this brochure is "to instill self-confidence, discipline and the work ethic by the administration of a strictly regimented paramilitary system." IMPACT "provides the opportunity for youthful offenders to develop positive, responsible behavior." Only convicted youthful offenders who meet the program's criteria may be ordered to attend IMPACT. *See* N.C.G.S. § 15A-1343.1 (2001). Upon successfully completing the program, defendants are discharged from IMPACT and released into the custody of their probation officers to complete their probation.

The conditions of confinement at IMPACT greatly differ from those of a parolee or a defendant on house arrest. Defendants held at an IMPACT facility, referred to as trainees, relinquish all their freedom to the IMPACT staff composed of Department of Correction officers. Daily activities are strictly regimented from 4:30 a.m. wake-up until 8:30 p.m., when trainees are given thirty minutes of free time before lights out at 9:00 p.m. The daily routine involves physical training, marching, cleaning rooms, and eight hours of work or drills. A majority of the work involves clearing land or cleaning property for federal, state, and local government agencies. Five nights a week, trainees are required to participate in two and one half hours of school, either GED instruction or a life-skills program.

During his probation violation hearing, defendant testified as to his experiences and the conditions at IMPACT. He testified that he voluntarily attended IMPACT, that the facility was not locked, that it did not have a fence around it, and that he could leave at any time. Defendant also gave testimony about the average day in the program. The State contends this testimony demonstrates that defendant was not in the custody of the State. We disagree. Regardless of defendant's

testimony and contrary to the State's argument, we conclude that this environment does present a custodial situation wherein defendant was denied his liberty.

In this case, defendant was "ordered" to attend and thus was required to "[s]ubmit to a period of residential treatment in the Intensive Motivational Program of Alternative Correctional Treatment (IMPACT)." N.C.G.S. § 15A-1343(b1)(2a). If defendant had not attended IMPACT as ordered, he would have been in violation of the special conditions of probation and subject to having his sentence activated. *See generally* N.C.G.S. § 15A-1344(a), (d), (e) (2001). As discussed above, the Court of Appeals likened defendant's attending IMPACT to a defendant's required visits with his probation officer and determined that both are voluntary conditions of probation. *Hearst*, 147 N.C. App. at 302, 555 S.E.2d at 360. The Court of Appeals concluded that defendant was not required to participate in IMPACT and was not required to meet with his probation officer. However, the Court of Appeals noted that if he had failed to do either, defendant would have been subject "to activation of his suspended sentence." *Id.* at 302-03, 555 S.E.2d at 360. In its brief, the State agrees with the Court of Appeals' conclusion that if defendant had failed to attend IMPACT, he would have been subject "to activation of his active sentence."

Although IMPACT is reported to be a ninety-eight day program on average, we note that defendant successfully completed the program in eighty-one days. The trial court sentenced defendant to a minimum of six months' imprisonment and a corresponding maximum of eight months' imprisonment and then suspended this sentence subject to terms of probation. Upon his violation of these terms, defendant was ordered to IMPACT in lieu of outright revocation and activation, which subsequently occurred. Thus, at the time of his first violation, defendant had the choice of either (1) attending IMPACT for the requisite period for completion of the program and then completing the rest of his probation, or (2) serving his active sentence of six to eight months. Under these circumstances, defendant's decision to either attend IMPACT or be sentenced to a longer period of incarceration cannot be found to be "voluntary" in the ordinary sense of that term as the State contends and the Court of Appeals concluded. In addition, while there are no locked gates or fences, the conditions at IMPACT resemble imprisonment. Trainees have no control over any daily activities while at IMPACT, except for thirty minutes a day, as demonstrated by defendant's testimony and the IMPACT brochure.

**STATE v. HEARST**

[356 N.C. 132 (2002)]

A defendant placed on house arrest or one required to visit a probation officer has no such restrictions. While sentenced to house arrest, a defendant is confined to his or her home, but still maintains a large amount of liberty. In fact, all such defendants are free to do as they please in their own homes. They are allowed to associate with family and friends, eat when and what they want, engage in all their normal home activities, and sleep when they want in the comfort of their own homes. Likewise, there exists substantial liberty in regard to required visits with a probation officer. A defendant meets with his or her probation officer for only a brief amount of time during a day over a specified period. Other than those required visits, a defendant has full freedom of association, activity and movement as long as such does not violate any other condition of probation.

While trainees may be "free to leave" IMPACT, those who fail or withdraw from the program face the probability of returning to prison. The State stated in oral argument that failure to complete IMPACT is a probation violation, which results in the defendant being returned to court for modification of the trial court's original order. *See generally* N.C.G.S. § 15A-1344(c). Defendant was aware of the consequences of leaving or quitting IMPACT. He testified during his probation violation hearing that if he left the facility, he "would have [to come] back to court for the contempt of court charge." As the State acknowledged in its brief, modification of a judgment based on a probation violation often results in a defendant facing activation of his or her suspended sentence. *See generally* N.C.G.S. § 15A-1344(d).

In many respects, a defendant ordered to submit to the IMPACT program has less freedom or liberty than a defendant serving an active sentence in a standard correctional facility. "Confinement" is defined as "the act of imprisoning or restraining someone; the state of being imprisoned or restrained," while "custody" is defined as "the care and control of a thing or person for inspection, preservation, or security." *Black's Law Dictionary* 390 (7th ed. 1999). *Black's Law Dictionary* also specifically defines types of custody such as "penal custody" and "physical custody." *Id.* "Penal custody" is defined as "custody intended to punish a criminal offender," and "physical custody" is defined as "custody of a person . . . whose freedom is directly controlled and limited." *Id.* The requirements and demands of the IMPACT program fully meet these definitions, and we thus conclude that defendant was "in confinement" or "custody" while attending IMPACT, within the ordinary and reasonable meaning of each of those terms as they are used in N.C.G.S. § 15-196.1. Defendant was

therefore entitled to credit for the eighty-one days he spent in the program. *See* N.C.G.S. § 15-196.1.

Defendant contends in his second assignment of error that failure to credit time spent attending IMPACT is in violation of N.C.G.S. § 15A-1340.17 because the sentence served will exceed the statutory sentence allowed; and in his third assignment of error, he argues that failure to credit time spent attending IMPACT violates guarantees in the United States Constitution and the North Carolina Constitution against double jeopardy. In view of our determination that time spent attending IMPACT should be credited against a defendant's activated sentence, we decline to address these issues.

In summary, based upon our holding in *Farris*, and pursuant to N.C.G.S. § 15-196.1, defendant must be credited with "all time [he] was in custody and not at liberty as the result of the charge." *Farris*, 336 N.C. at 556, 444 S.E.2d at 185. Defendant was "in custody and not at liberty" while participating in the IMPACT program. *Id.* Thus, we conclude that the trial court's refusal to credit the eighty-one days defendant spent attending IMPACT was error. The decision of the Court of Appeals is therefore reversed, and this case is remanded to that court for further remand to the trial court for disposition in accord with this opinion.

REVERSED AND REMANDED.