STATE OF NORTH CAROLINA v. ALONZO PRESTON DENT

No. COA05-60

(Filed 15 November 2005)

1. **Constitutional Law— effective assistance of counsel— failure to move to suppress inculpatory statement and evidence**

Defendant did not receive ineffective assistance of counsel in a possession of a controlled substance on the premises of a local confinement facility case based on his counsel's failure to move to suppress his inculpatory statement to law enforcement officers as well as the evidence seized during the search of his person, because: (1) there was no meritorious basis to support suppression of defendant's statements or the marijuana found on his person; (2) the officers' comments qualify as those normally attendant to arrest and custody, and are thus not considered as questions or interrogation for purposes of Miranda; and (3) defendant is unable to demonstrate a reasonable probability that but for his counsel's failure to move to suppress the evidence, the result of the proceeding would have been different.

2. **Drugs— possession of marijuana—premises of local confinement facility—secured search area**

The trial court properly denied defendant's motion to dismiss a charge of possession of a controlled substance on the premises of a local confinement facility in violation of N.C.G.S. § 90-95(e)(9) where the evidence tended to show that defendant possessed marijuana in a secured area of the Forsyth County Law Enforcement and Detention Center provided for the detention and search of individuals awaiting an appearance before the magistrate.

### 3. Drugs— instructions—local confinement facility

The trial court did not commit plain error in a possession of a controlled substance on the premises of a local confinement facility case by instructing the jury that the Forsyth County Law Enforcement and Detention Center is a local confinement facility, because: (1) the county law enforcement and detention center is a multiple-use building which includes, among other things, a jail, the sheriff's office, and the magistrate's office; (2) officers discovered marijuana on defendant's person not while he was in the ·magistrate's office, but while he was in a secured area of the center provided for the detention and search of individuals awaiting appearance before the magistrate; (3) the determination of whether this area was on the premises of a local confinement facility involved the interpretation of the bounds of a statute, which is a question of law for the trial court, not a question of fact for the jury; and (4) the trial court made a proper determination regarding the applicability of N.C.G.S. § 90-95(e)(9) to the facts of this case.

Appeal by defendant from judgment entered 19 August 2004 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals 22 September 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General Victoria L. Voight, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Charlesena Elliott Walker, for defendant-appellant.*

SMITH, Judge.

Alonzo Preston Dent ("defendant") appeals his convictions for possession of a controlled substance on the premises of a local confinement facility and obtaining habitual felon status. For the reasons discussed herein, we hold that defendant received a trial free of prejudicial error.

At trial, the State's evidence tended to show the following: On 7 August 2003, Winston-Salem Police Department Officer E.D. Bradshaw ("Officer Bradshaw") noticed defendant driving a vehicle in the Washington Park neighborhood of Winston-Salem, North Carolina. Believing defendant's driving privileges were revoked, Officer Bradshaw stopped defendant's vehicle and requested defendant to provide a valid driver's license and vehicle registration.

STATE v. DENT

[174 N.C. App. 459 (2005)]

Although defendant provided valid registration for the vehicle, he admitted he did not have a driver's license or driving privileges in North Carolina. Officer Bradshaw then arrested defendant for driving while license revoked. While searching defendant, Officer Bradshaw noticed the smell of "burnt marijuana about [defendant's] person[.]" He also found approximately $800.00 in cash and an unwrapped cigar in defendant's pockets. Officer Bradshaw did not find any marijuana on defendant's person during the search. When Officer Bradshaw asked defendant "several times" whether "he had any marijuana," defendant answered negatively.

Defendant was transported to the Forsyth County Law Enforcement and Detention Center. Prior to entering the building, Officer Bradshaw again asked defendant whether he was in possession of any controlled substances. Defendant replied he was not, and he was taken inside the building. After entering the lobby of the magistrate's office, Officer Bradshaw and Winston-Salem Police Department Officer L.T. Patterson ("Officer Patterson") took defendant into a nearby search room. Once inside the search room, Officer Bradshaw informed defendant that he would be "strip searched." Defendant then stated that he had "residue" in his right sock. When the officers removed defendant's sock, they found approximately 1.1 grams of marijuana inside.

Defendant was subsequently indicted for possession of a controlled substance on the premises of a local confinement facility and obtaining habitual felon status. Prior to trial, defendant filed a motion to dismiss the possession charge, arguing that the term "local confinement facility" did not encompass the search room or lobby of the magistrate's office. The trial court denied defendant's motion, and the case proceeded to trial on 18 August 2004. On 19 August 2004, the jury found defendant guilty of possession of a controlled substance on the premises of a local confinement facility. Defendant thereafter pled guilty to obtaining habitual felon status. After concluding defendant had six prior record points and a prior felony record III, the trial court sentenced defendant to a total of seventy to ninety-three months imprisonment. Defendant appeals.

---

The issues on appeal are whether: (I) defendant received ineffective assistance of counsel at trial; (II) the trial court erred by denying defendant's motion to dismiss; and (III) the trial court erred in instructing the jury.

[1] Defendant first argues that he received ineffective assistance of counsel at trial. Defendant asserts he is entitled to a new trial because his trial counsel failed to move to suppress his inculpatory statement to law enforcement officers as well as the evidence seized during the search of his person. We disagree.

"When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." *State v. Braswell,* 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985). To establish ineffective assistance of counsel, a defendant must satisfy the following two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). When reviewing an ineffective assistance of counsel claim, our appellate courts "engage[] in a presumption that [the] trial counsel's representation [wa]s within the boundaries of acceptable professional conduct." *State v. Roache,* 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004). "The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *Braswell,* 312 N.C. at 563, 324 S.E.2d at 248. "Thus, if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *Id.* at 563, 324 S.E.2d at 249. In the instant case, because we conclude there was no meritorious basis to support suppression of defendant's statements or the marijuana found on his person, we conclude defendant's trial counsel did not provide ineffective assistance by failing to move to suppress the evidence.

The record reflects that immediately prior to being strip searched, defendant informed the officers that he had "residue" in his

STATE v. DENT

[174 N.C. App. 459 (2005)]

right sock. Defendant contends that this inculpatory statement as well as the evidence seized pursuant to it were inadmissible at trial because they were a product of "custodial interrogation" held without first advising him of his *Miranda* rights. We do not agree.

In *State v. Phelps*, the defendant was arrested on two outstanding warrants and transported to "the county jail." 156 N.C. App. 119, 121, 575 S.E.2d 818, 820 (2003). Although no contraband was found during a search incident to his arrest, on the way to the jail a law enforcement officer "explained to [the defendant] that he needed to let [the officer] know . . . before [they] went past the jail doors if he had any kind of illegal substances or weapons on him, that it was an automatic felony no matter what it was . . . ." *Id.* The defendant thereafter confessed to possession of cocaine. Both the law enforcement officer's comments and the defendant's inculpatory statement were made prior to the defendant being advised of his *Miranda* rights. On appeal, it was determined that the officer "knew or should have known that his statement was reasonably likely to evoke an incriminating response" from the defendant, and thus the defendant's *Miranda* rights were violated. *Id.* at 123, 575 S.E.2d at 821. However, with respect to the cocaine seized following the "interrogation," it was held that because the defendant's statement was not a product of coercion, evidence seized subsequently and pursuant to the statement was admissible and would not qualify as "fruit of the poisonous tree." *Id.* at 124-26, 575 S.E.2d at 822-23. We concluded that "even if a *Miranda* violation had occurred, the crack cocaine was . . . admissible." *Id.* at 126, 575 S.E.2d at 823.[1]

As in *Phelps*, the transcript in the instant case reflects that, while in custody but prior to being advised of his *Miranda* rights, defendant was told several times that discovery of any controlled substance on his person after he arrived at the Forsyth County Law Enforcement and Detention Center would result in a felony charge. However, unlike in *Phelps*, defendant made no incriminating statement in re-

1. Although he concurred in this determination as well as the determination regarding the violation of the defendant's *Miranda* rights, Judge Hunter argued in dissent that the *Phelps* majority was incorrect in concluding that the trial court's erroneous admission of the defendant's incriminating statement was harmless beyond a reasonable doubt and that the controlled substance was also admissible under the inevitable discovery doctrine. 156 N.C. App. at 127-28, 575 S.E.2d at 823-25. On review, our Supreme Court agreed with Judge Hunter, reversing *per curiam* the majority's decision "[f]or the reasons stated in the dissenting opinion[.]" *State v. Phelps*, 358 N.C. 142, 592 S.E.2d 687 (2004). Therefore, our reliance on *Phelps* is limited to those conclusions reached by the entire panel as well as Judge Hunter's determinations regarding the prejudicial impact of the evidence.

STATE v. DENT

[174 N.C. App. 459 (2005)]

sponse to these custodial statements. Instead, defendant made his incriminating statement after he arrived at the Detention Center and just prior to being strip searched.

When examining the circumstances surrounding an alleged custodial interrogation, courts focus on the suspect's perceptions rather than the intent of law enforcement officers. *State v. Golphin*, 352 N.C. 364, 406, 533 S.E.2d 168, 199 (2000) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308 (1980)), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). Generally, "[t]he term 'interro-. gation' is not limited to express questioning by law enforcement officers, but also includes 'any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *Golphin*, 352 N.C. at 406, 533 S.E.2d at 199 (quoting *Innis*, 446 U.S. at 301, 64 L. Ed. 2d at 308). "However, because 'the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.' " *Golphin*, 352 N.C. at 406, 533 S.E.2d at 199 (quoting *Innis*, 446 U.S. at 301-02, 64 L. Ed. 2d at 308)) (emphasis in original).

In the case *sub judice*, after being asked to explain "what happened inside the search room[,]" Officer Bradshaw testified as follows:

> After I informed [defendant] that we were going to be completing a strip search of him inside the search room, myself and, at the time, Corporal Patterson, [defendant] advised me that he had some, quote, residue in his right sock.

As detailed above, defendant had rebuffed several prior attempts by the law enforcement officers to elicit information regarding defendant's possession of a controlled substance. At the time defendant made his statement, the officers were merely informing him of the extent of their then-impending search. There is no indication that the officers' comments at that time "were . . . intended nor reasonably expected to elicit an incriminating response from defendant." *State v. Vick*, 341 N.C. 569, 581, 461 S.E.2d 655, 662 (1995) (concluding that police captain's statements during fingerprinting that he would talk with the defendant later and answer any of the defendant's questions at that time were not intended or expected to elicit an incriminating response). Instead, we conclude that the officers' comments qualify

as those "normally attendant to arrest and custody," and are thus not considered as questions or interrogation for purposes of *Miranda*. *See Innis*, 446 U.S. at 300-02, 64 L. Ed. 2d at 307-08 (concluding that " '[i]nterrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself[,]" and that "the term 'interrogation' under *Miranda*" does not extend to "words or actions on the part of the police . . . normally attendant to arrest and custody"). Therefore, any incriminating statement made by defendant and any evidence seized following these comments were properly admissible at trial. In light of the foregoing, and because defendant is unable to demonstrate a "reasonable probability that, but for [his] counsel's [failure to move to suppress the evidence], the result of the proceeding would have been different[,]" *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, we hold that defendant did not receive ineffective assistance of counsel at trial. Accordingly, we reject defendant's first argument.

[2] Defendant next argues that the trial court erred by denying his motion to dismiss the charge of possession of a controlled substance on the premises of a local confinement facility. Although he concedes that the magistrate's office, its lobby, and its search rooms are each located inside the Forsyth County Law Enforcement and Detention Center, defendant contends that the legislature did not intend N.C. Gen. Stat. § 90-95(e)(9) to apply in these areas. We disagree.

N.C. Gen. Stat. § 90-95(e)(9) (2003) provides that "[a]ny person who [possesses a controlled substance] on the premises of a penal institution or local confinement facility shall be guilty of a Class H felony." In support of his contention, defendant notes that while N.C. Gen. Stat. § 90-95(e)(9) does not define the term "local confinement facility," N.C. Gen. Stat. § 153A-217 (2003) provides the following definition for the term:

> "Local confinement facility" includes a county or city jail, a local lockup, a regional or district jail, a juvenile detention facility, a detention facility for adults operated by a local government, and any other facility operated by a local government for confinement of persons awaiting trial or serving sentences . . . .

Thus, defendant asserts that because the magistrate is an officer of the district court and the magistrate's office is separate from "the actual housing where the inmates would be sleeping and conducting their daily activities," reading N.C. Gen. Stat. § 90-95(e)(9) to include

the area at issue leads to an absurd result not contemplated by the legislature. We do not agree.

It is well established that the "primary endeavor" of statutory interpretation is to give effect to the legislature's intent. *See State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 276-77 (2005). Where a statute's language is clear and unambiguous, the court should give its words their plain and definite meaning. *Id.* at 614, 614 S.E.2d at 277. However, where a statute is ambiguous, courts will construe the statute to "ascertain the legislative will[,]" mindful that "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, . . . the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Id.* (citations and quotation marks omitted).

Although we note that other statutes prohibit certain actions by individuals in "the custody of any" local confinement facility, *see, e.g.*, N.C. Gen. Stat. § 14-258.2 (prohibiting the possession of a dangerous weapon by "any person under the custody of any local confinement facility as defined in G.S. 153A-217"), N.C. Gen. Stat. § 14-258.3 (prohibiting the taking, holding, or carrying away of any hostages by "any person in the custody of any local confinement facility (as defined by G.S. 153A-217)"), and N.C. Gen. Stat. § 14-258.4 (prohibiting the wilful throwing, emitting, or projecting of bodily fluids or excrement at any person who is an employee of the State or a local government by "[a]ny person in the custody of . . . any local confinement facility (as defined in G.S. 153A-217, or G.S. 153A-230.1)"), we also note that, by its plain language, N.C. Gen. Stat. § 90-95(e)(9) is not restricted solely to those individuals in custody of a local confinement facility or those actions occurring at a particular section of the facility. Instead, unlike N.C. Gen. Stat. §§ 14-258.2, 14-258.3, and 14-258.4, N.C. Gen. Stat. § 90-95(e)(9) clearly extends to "any person" possessing a controlled substance at a local confinement facility, and the scope of its coverage expressly includes the "premises" of such facilities.

Black's Law Dictionary notes that "premises" is "an elastic and inclusive term" when used to refer to "estates and property," in that "it does not have one definite and fixed meaning; its meaning is to be determined by its context and is dependent on the circumstances in which used[.]" (6th ed. 1990). In the context of criminal law, "[t]he term as used in a search warrant includes land, buildings, and appurtenances thereto." *Id.* In the case at bar, testimony at trial tended to

show that, in order to enter the area of the Forsyth County Law Enforcement and Detention Center at issue, law enforcement officers must first proceed through a locked vehicle gate and then check their weapons and identify themselves via an intercom system. The secured lobby of the facility contains three temporary "holding cells," as well as access to the area where jail personnel and more permanent cells are located. Only law enforcement officers and those individuals in custody or under "special arrangements" are allowed to enter the area. While the room in which defendant was searched is "just on the other side of the door" allowing entry into the magistrate's lobby, it is nevertheless a secured room where law enforcement officers detain and search those individuals who are to be taken before the magistrate.

Our Supreme Court has consistently held that criminal statutes are generally construed narrowly against the State and in favor of the accused. *See, e.g., State v. Hearst*, 356 N.C. 132, 136, 567 S.E.2d 124, 128 (2002). However, this rule is not violated " 'by permitting the words of [a] statute to have their full meaning, or the more extended of two meanings, . . . but the words should be taken in such a sense, bent neither one way nor the other, as will best manifest the legislative intent.' " *State v. Raines*, 319 N.C. 258, 263, 354 S.E.2d 486, 489-90 (1987) (quoting *United States v. Hartwell*, 73 U.S. 385, 396, 18 L. Ed. 830, 833 (1868)). Thus, "[t]he canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose. . . . Nor does it demand that a statute be given the 'narrowest meaning'; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers." *United States v. Brown*, 333 U.S. 18, 25-26, 92 L. Ed. 442, 448 (1948).

In light of the foregoing, and giving the word "premises" in N.C. Gen. Stat. § 90-95(e)(9) its plain meaning, we conclude that the legislature intended to cover that portion of the Forsyth County Law Enforcement and Detention Center at issue in the instant case. The legislative intent in making possession of a controlled substance on the premises of a local confinement facility felonious is clear: to deter and prevent drug possession among those individuals present at local confinement facilities. By including the term "on the premises of" in its description of the restricted area, the legislature plainly intended that N.C. Gen. Stat. § 90-95(e)(9) should extend beyond the bounds of the "lockup" area of a local confinement facility, including to those secured areas in which arrestees are temporarily detained for search,

booking, and other purposes. Therefore, the trial court did not err by denying defendant's motion to dismiss the charge of possession of a controlled substance on the premises of a local confinement facility. Accordingly, we reject defendant's second argument.

[3] Defendant next argues the trial court erred in its jury instructions. Although defendant concedes he failed to object to this alleged error at trial, he now asserts the trial court committed plain error by instructing the jury that "[t]he Forsyth County Detention Center is a local confinement facility." We disagree.

"A prerequisite to [an appellate court's] engaging in a 'plain error' analysis is the determination that the instruction constitutes 'error' at all." *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986). Once we have determined that the trial court erred, " 'before deciding that an error by the trial court amounts to "plain error," [we] must be convinced that absent the error the jury probably would have reached a different verdict.' " *Id.* (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)).

In the case *sub judice*, defendant contends that the trial court's instruction preempted the jury's determination and that "[t]he real question needing to be decided by the jury was not whether the Forsyth County Detention Center was a local confinement facility, but rather, whether the *magistrate's office* where [defendant] was searched and the marijuana was found, located in the Forsyth County Detention Center, was a local confinement facility." However, we believe defendant mischaracterizes the facts of this case. The Forsyth County Law Enforcement and Detention Center is a multiple-use building which includes, among other things, a jail, the sheriff's office, and the magistrate's office. As discussed above, law enforcement officers discovered marijuana on defendant's person not while he was in the magistrate's office, but while he was in a secured area of the Forsyth County Law Enforcement and Detention Center provided for the detention and search of individuals awaiting appearance before the magistrate. The determination of whether this area was "on the premises of a local confinement facility" involved the interpretation of the bounds of a statute, which is a question of law for the trial court, not a question of fact for the jury. As the trial court made a proper determination regarding the applicability of N.C. Gen. Stat. § 90-95(e)(9) to the facts of the instant case, we conclude the trial court did not err in instructing the jury. Therefore, we reject defendant's final argument.

In light of the foregoing, we hold that defendant received a trial free of prejudicial error.

No error.

Judges HUDSON and ELMORE concur.