An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-561

Filed 18 March 2026

Surry County, No. 23CR213728-850

STATE OF NORTH CAROLINA

      v.

SHANNON EDWARD GAULT, Defendant.

Appeal by Defendant from judgment entered 10 January 2024 by Judge Angela B. Puckett in Surry County Superior Court. Heard in the Court of Appeals 15 January 2025.

> *Yoder Law PLLC, by Attorney Jason Christopher Yoder, for defendant-appellant.*
>
> *Attorney General Jeff Jackson, by Assistant Attorney General Rana M. Badwan, for the State.*

STADING, Judge.

Shannon Edward Gault ("Defendant") appeals from final judgment after he pled guilty to failure to register changes or obtain a new online identifier. After careful consideration, we affirm in part, vacate in part, and vacate and remand in part.

## I.    Background

Defendant was convicted of second-degree sexual exploitation of a minor on 18 July 2022.  As a result, he was placed on supervised probation.  As a special condition of his probation, Defendant "was to have no internet access or access to social networking sites[.]"  While conducting a supervision visit on 8 December 2022, Defendant's probation officer discovered various images on Defendant's cell phone that originated from a commonly known social media application—SnapChat.  It was later determined that Defendant accessed and controlled various SnapChat accounts from his cell phone despite the condition of his probation.  Following his violation, Defendant's probation "was revoked for the original offense."[1]

On 11 December 2023, the Surry County Grand Jury returned a true bill of indictment charging Defendant with one count of failure to register changes or obtain a new online identifier as a sex offender.  Defendant pled guilty on 10 January 2024.  That same day, the trial court sentenced Defendant to 19–32 months in prison, suspended for 36 months of supervised probation and a 90-day split sentence.  The

---

[1] Defendant previously appealed the trial court's judgment that found a probation violation, revoked his probation, and activated his sentence. *State v. Gault*, No. COA24-5, 2025 N.C. App. LEXIS 375 (2025).  Defendant argued "that the trial court lacked jurisdiction to revoke his probation [and] the evidence was insufficient to establish that he violated a condition of his probation." *Id.* at *1.  A prior panel from this Court held that "the violation report complied with the notice requirement under North Carolina General Statute Section 15A-1345(e), so the trial court had subject matter jurisdiction in Defendant's probation revocation hearing." *Id.* at *22. The prior panel determined "that there was insufficient competent evidence that Defendant violated his probation by committing a criminal offense" and reversed the "trial court's judgment revoking Defendant's probation[.]" *Id.*

trial court further ordered that Defendant "have no internet access or access to any social media" as a special condition of his probation.

Defendant's trial attorney objected to the imposition of this special condition of probation, arguing that it was unconstitutional:

> [DEFENDANT'S ATTORNEY]: [B]efore Your Honor puts one of these conditions to be the internet, I'm not sure that's a constitutional judgment.

The trial court replied:

> [TRIAL COURT]: The Court does hear your argument, but . . . is going to order that he have no internet access or access to any social media. He is to perform 72 hours of community service, pay the community service fee associated with that, not have, use, possess any controlled substance or alcoholic beverage. Submit to warrantless searches of your person, your vehicle, your residence to insure you are complying with that condition of probation, along with unannounced drug and/or breath tests. And, of course, not violate any of the laws of the State of North Carolina.

Following sentencing, Defendant gave oral notice of appeal in open court. He also petitioned our Court for a writ of certiorari ("PWC") on 28 August 2024.

## II. Jurisdiction

On appeal, Defendant asserts the trial court erred in ordering 36 months of probation to commence after he was released from serving a 90-day split sentence because it exceeded the maximum probationary period allowed under N.C. Gen. Stat. § 15A-1343.2(d)(4) (2023). We have jurisdiction to consider this issue under N.C. Gen. Stat. § 15A-1444(a2) (2023). *See State v. Sale*, 232 N.C. App. 662, 663–64, 754 S.E.2d

474, 476 (2014) (reviewing whether the trial court made the appropriate findings of fact to impose a longer probationary period under section 15A-1343.2(d) after the defendant entered an *Alford* plea); *see also State v. Porter*, 282 N.C. App. 351, 352, 870 S.E.2d 148, 149 (2022); *see also State v. Branch*, 194 N.C. App. 173, 178, 669 S.E.2d 18, 21 (2008).

We must next determine whether this Court has jurisdiction to consider Defendant's remaining issues proposed on appeal in view of his PWC. Defendant requests us to review whether a total ban on accessing the Internet and social media, as a special condition of probation, is unreasonable, overbroad, and unconstitutional under the First Amendment to the United States Constitution. In the alternative, he requests that we review whether the imposed total ban was an abuse of discretion in view of N.C. Gen. Stat. § 15A-1343(b1)(10) (2023).

"In North Carolina, a defendant's right to appeal in a criminal proceeding is purely a creation of state statute." *State v. Pimental*, 153 N.C. App. 69, 72, 568 S.E.2d 867, 869 (2002). To that end, a defendant's right to appeal after the entry of a guilty plea is limited by N.C. Gen. Stat. § 15A-1444. That statute provides that a defendant who pleads guilty to a felony or misdemeanor in superior court may appeal the following issues as a matter of right:

> (a2) A defendant who has entered a plea of guilty or no contest to a felony or misdemeanor in superior court is entitled to appeal as a matter of right the issue of whether the sentence imposed:

(1) Results from an incorrect finding of the defendant's prior record level under G.S. 15A-1340.14 or the defendant's prior conviction level under G.S. 15A-1340.21;

(2) Contains a type of sentence disposition that is not authorized by G.S. 15A-1340.17 or G.S. 15A-1340.23 for the defendant's class of offense and prior record or conviction level; or

(3) Contains a term of imprisonment that is for a duration not authorized by G.S. 15A-1340.17 or G.S. 15A-1340.23 for the defendant's class of offense and prior record or conviction level.

*Id.* § 15A-1444(a2). Indeed, "[e]xcept as provided in subsections (a1) and (a2) . . . the defendant is not entitled to appellate review as a matter of right when he has entered a plea of guilty or no contest to a criminal charge in the superior court . . . ." *Id.* § 15A-1444(e). Even so, if a defendant has no direct right of appeal via subsection 15A-1444(a2), "he may petition the appellate division for review by writ of certiorari." *Id.*

"The Court of Appeals has jurisdiction . . . to issue the prerogative writs, including mandamus, prohibition, *certiorari*, and supersedeas, in aid of its own jurisdiction . . . ." *Id.* § 7A-32(c) (2023) (emphasis added); N.C. R. App. P. 21(a)(1) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court . . . ."). "Our precedent establishes a two-factor test to assess whether certiorari review by an appellate court is appropriate. First, a writ of certiorari should issue only if the petitioner can show 'merit or that error was probably committed below.'" *Cryan v. Nat'l Council of YMCA of the United States*, 384 N.C. 569, 572, 572,

887 S.E.2d 848, 851, 851 (2023) (citation omitted). "Second, a writ of certiorari should issue only if there are 'extraordinary circumstances' to justify it." *Id.* (citation omitted). "There is no fixed list of 'extraordinary circumstances' that warrant certiorari review, but this factor generally requires a showing of substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice and liberty at stake.'" *Id.* at 573, 887 S.E.2d at 851 (citation omitted). "Ultimately, the decision to issue a writ of certiorari rests in the sound discretion of the presiding court." *Id.* (citing *Ricks*, 378 N.C. at 740, 862 S.E.2d at 838).

Our review leads us to conclude that Defendant has sufficiently shown merit, and he has established extraordinary circumstances warranting our issuance of the writ. *See Cryan*, 384 N.C. at 573, 887 S.E.2d at 851.

## III. Analysis

### A. Length of Probationary Period

Defendant first argues the trial court erred in ordering 36 months of supervised probation to commence after he was released from incarceration. Defendant maintains, absent specific findings, the 90-day split sentence violates the 36-month maximum set out in N.C. Gen. Stat. § 15A-1343.2(d)(4).

"Alleged statutory errors are questions of law, and as such, are reviewed *de novo*." *State v. Mackey*, 209 N.C. App. 116, 120, 708 S.E.2d 719, 721 (2011) (citations omitted). "Under a *de novo* review, the court considers the matter anew and freely

substitutes its own judgment for that of the lower tribunal." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citations and quotation marks omitted).

The trial court may order a defendant to "[s]ubmit to imprisonment required for special probation under G.S. 15A-1351(a) or G.S. 15A-1344(e)." *Id.* § 15A-1343(b1)(3). Indeed, "N.C. [Gen. Stat.] § 15A-1351 allows a trial court to order a defendant to submit to a period or periods of imprisonment in a local confinement facility or in the custody of the Department of Correction as a condition of special probation." *State v. Hearst*, 356 N.C. 132, 135, 567 S.E.2d 124, 127 (2002). The court determines these periods of imprisonment "at whatever time or intervals within the period of probation, consecutive or nonconsecutive . . . as provided in [subsection 15A-1351(a)]." N.C. Gen. Stat. § 15A-1351(a). That subsection further provides, "[t]he original period of probation, including the period of imprisonment required for special probation, shall be as specified in G.S. 15A-1343.2(d), but may not exceed a maximum of five years, except as provided by G.S. 15A-1342(a)." *Id.*

In turn, N.C. Gen. Stat. § 15A-1343.2(d) prescribes the minimum and maximum length of probation:

> (d) Lengths of Probation Terms Under Structured Sentencing. - Unless the court makes specific findings that longer or shorter periods of probation are necessary, the length of the original period of probation for offenders sentenced under Article 81B shall be as follows:
>
> . . . .

(4) For felons sentenced to intermediate punishment, not less than 18 nor more than 36 months.

If the court finds at the time of sentencing that a longer period of probation is necessary, that period may not exceed a maximum of five years, as specified in G.S. 15A-1342 and G.S. 15A-1351.

Thus, if a felon is sentenced to intermediate punishment, the maximum probationary period he may receive is 36 months, "[u]nless the court makes specific findings that [a] longer . . . period of probation [is] necessary[.]" *Id.* This 36-month maximum "includ[es] the period of imprisonment required for special probation . . . ." *Id.* § 15A-1351(a); *e.g.*, *State v. Hendricks*, 277 N.C. App. 304, 307, 858 S.E.2d 384, 386 (2021) ("[T]he trial court originally sentenced Defendant to an intermediate punishment of special probation for 60 months, including an active sentence of 330 days. Therefore, under N.C. Gen. Stat. § 15A-1351(a), Defendant's total probationary period included his 330-day active sentence.").

Here, after Defendant pled guilty to a felony, the trial court sentenced Defendant to an intermediate punishment and imposed a 36-month probationary period—the maximum length allowable by subsection 15A-1343.2(d)(4) without making specific findings. In addition, pursuant to subsection 15A-1351(a), the trial court ordered Defendant to serve a 90-day split sentence as a special condition of probation. The trial court ordered this 90-day sentence to begin "at the expiration of the sentence [he was] serving in 21 CRS 51052/54"—his previous sentence for second-degree sexual exploitation of a minor. As to the 36 months of supervised probation,

the trial court ordered, it "shall begin" once "released from incarceration." However, the trial court failed to indicate *which* period of incarceration it was referencing—the previous sentence for second-degree sexual exploitation of a minor or the 90-day split sentence pursuant to subsection 15A-1351(a).

Defendant's 90-day split sentence, as a special condition of probation, must be calculated into the overall length of his probationary period. N.C. Gen. Stat. § 15A-1351(a) ("The original period of probation, including the period of imprisonment required for special probation, shall be as specified in G.S. 15A-1343.2(d) . . . ."); *State v. Hooper*, 358 N.C. 122, 125, 591 S.E.2d 514, 516 (2004) (citation omitted) ("Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning."). Subsection 15A-1351(a) confirms that a sentence of special probation occurs within the period of probation:

> Under a sentence of special probation, the court may suspend the term of imprisonment and place the defendant on probation as provided in Article 82, Probation, and in addition require that the defendant submit to a period or periods of imprisonment in the custody of the Division of Community Supervision and Reentry of the Department of Adult Correction or a designated local confinement or treatment facility at whatever time or intervals within the period of probation, consecutive or nonconsecutive, the court determines, as provided in this subsection.

In *State v. Hendricks*, our Court applied subsection 15A-1351(a) when calculating the defendant's aggregate probationary term. 277 N.C. App. at 307, 858

S.E.2d at 386. There, "the trial court originally sentenced Defendant to an intermediate punishment of special probation for 60 months, including an active sentence of 330 days." *Id.* Pursuant to "N.C. Gen. Stat. § 15A-1351(a)," our Court reasoned the defendant's "total probationary period included his 330-day active sentence." *Id.* Applying the same logic here, and as the State concedes, Defendant's total probationary period—36 months—*included* his 90-day split sentence. After serving his 90-day split sentence, Defendant will have 33 months of supervised probation remaining.

Thus, contrary to Defendant's urging, the trial court did not sentence him to a probationary period in excess of 36 months; as such, no written findings were necessary. *See* N.C. Gen. Stat. § 15A-1343.2(d)(4). We therefore affirm this portion of the trial court's judgment. But to the extent that the trial court's written judgment does not indicate after *which* period of incarceration his supervised probation will begin, this is merely a clerical error. *See State v. Allen*, 249 N.C. App. 376, 380, 790 S.E.2d 588, 591 (2016) (brackets in original and citation omitted) ("A clerical error is defined as, '[a]n error resulting from a minor mistake or inadvertence, esp[ecially] in writing or copying something on the record, and not from judicial reasoning or determination.'"). And to the extent that the trial court's written judgment does not reflect that the 90-day split sentence should be served *during* the 36-month probationary period, it is a clerical error and we remand for correction. *See id.* at 379, 790 S.E.2d at 591 (citation omitted) ("If the alleged sentencing error is only clerical

- 10 -

in nature, 'it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth.'").

## B.    Special Condition of Probation

Acting under N.C. Gen. Stat. § 15A-1342(b1), the trial court imposed a special condition of probation: "no internet access ordered by the court or any social media." Defendant challenges the condition as an unlawful "sweeping and total ban."   He offers a series of arguments aimed at equating generalized Internet access with the freedom of speech and press protections provided under the United States and North Carolina Constitutions.   Citing cases from other jurisdictions, Defendant frames his argument that the Internet is "the air we all breathe now."   But, since "cyberspace is different from the physical world, and . . . we cannot appreciate yet the full dimensions and vast potential of the Cyber Age, we should proceed circumspectly, taking one step at a time."  *Packingham v. North Carolina*, 582 U.S. 98, 118–19, 137 S. Ct. 1730, 1744 (2017) (J. Alito, concurring).

Ordinarily, "[a] challenge to a trial court's decision to impose a condition of probation is reviewed on appeal using an abuse of discretion standard of review . . . ." *State v. Allah*, 231 N.C. App. 88, 98, 750 S.E.2d 903, 911 (2013).   "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision."  *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998).  That said, "[t]he standard of review for alleged violations of constitutional rights is *de novo."  State v. Graham*, 200 N.C. App. 204,

214, 683 S.E.2d 437, 444 (2009). "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (citation omitted).

The United States and North Carolina constitutions provide freedom of speech protections. U.S. Const. amend. I. ("Congress shall make no law . . . abridging the freedom of speech . . . ."); N.C. Const. Art. I § 14 ("Freedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse."). But "[i]nherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled."'" *United States v. Knights*, 534 U.S. 112, 119, 122 S. Ct. 587, 591 (2001) (first quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S. Ct. 3164, 3169 (1987)) (then quoting *Morrisey v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593 (1972)). "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Knights*, 534 U.S. at 119, 122 S. Ct. at 591; *see also United States v. Henson*, 22 F. App'x 107, 112 (4th Cir. 2001) (per curiam) ("A special condition of supervised release may restrict fundamental rights when the special condition 'is narrowly tailored and is directly related to deterring [a defendant] and protecting the public.").

Although the facts of this case present a novel question under North Carolina law, the federal courts have addressed comparable matters. In *United States v.*

*Mixell*, the defendant argued a condition of supervised release unlawfully infringed on his First and Fourth Amendment rights since it required him to "participate for five years in a program monitoring his computer and Internet use." 806 F. App'x 180, 182 (4th Cir. 2020). Similar to North Carolina state law, the Fourth Circuit noted the trial court "is afforded broad latitude to impose conditions on supervised release," and reviews such conditions "only for an abuse of discretion." *Id.* at 184 (4th Cir. 2020) (cleaned up); *see also State v. Johnston*, 123 N.C. App. 292, 304-05, 473 S.E.2d 25, 33 (1996) (citing *State v. Harrington*, 78 N.C. App. 39, 48, 336 S.E.2d 852, 857 (1985)) ("Under N.C. Gen. Stat. section 15A-1343(b1), the trial court may impose any conditions on probation that it determines 'to be reasonably related to [defendant's] rehabilitation.' G.S. § 15A-1343(b1)(10)(1995). The trial court is accorded 'substantial discretion' in imposing conditions under this section."). Citing *United States v. LaCoste*, 821 F.3d 1187, 1191 (9th Cir. 2016) as an example, the Fourth Circuit also noted "[s]pecial conditions involving limitations on computer use or required computer monitoring have been upheld when the defendant has a history of using a computer or the Internet to commit present or prior crimes." *Mixell*, 806 F. App'x at 185. The Court acknowledged "the centrality of the Internet to modern life," but emphasized the special condition did not prevent the defendant from "using a computer or electronic device to access the Internet or to communicate on it" and was "for a limited five-year period of supervised release." *Id.* (cleaned up). The special condition was thus appropriate since the defendant "used his computer in his original

- 13 -

crime," and "was sufficiently tailored because the monitoring program d[id] not prevent him from speaking online." *Id.*

Defendant relies heavily on *Packingham v. North Carolina* and contends it is dispositive of this issue. 582 U.S. 98, 137 S. Ct. 1730. He maintains, "[i]f the statute in *Packingham* was struck down using intermediate scrutiny, the total Internet ban in this case must also fail." In *Packingham*, the United States Supreme Court analyzed a state law barring registered sex offenders, "a status that can endure for 30 years or more," "from gaining access to commercial social networking sites." *Id.* at 102, 137 S. Ct. at 1734. Applying intermediate scrutiny, the Court acknowledged a valid governmental interest but did not believe the statute was narrowly tailored to serve that interest. *Id.* at 105–07, 137 S. Ct. at 1736–37. The Court noted, "[i]t is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences." *Id.* at 108, 137 S. Ct. at 1737. Although the government's interests and breadth of the restriction here resemble *Packingham*, Defendant's attempts to portray the case as a perfect analogue are misplaced as his argument ignores a distinction in the narrow tailoring analysis for probationers and post-release supervisees.

In *United States v. Bobal*, the defendant also argued that *Packingham* was controlling in his challenge of a special condition of his supervised release that prohibited him from "using a computer except for work and with the prior permission of the district court." 981 F.3d 971, 976–77 (11th Cir. 2020). The Eleventh Circuit

disagreed with the defendant for three reasons: (1) the law in *Packingham* restricted sex offenders even after completion of their sentence; (2) the law in *Packingham* applied to all registered sex offenders, not only those who used a computer in the commission of their offense; and (3) the restriction in *Bobal* was "not a complete bar to the exercise of [defendant's] First Amendment right." *Id.* at 977. The Court reiterated the principle that a trial court "may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens during supervised release. *Id.* (cleaned up).

Since federal precedent is not directly on point, but provides a level of guidance, we must evaluate whether this content-neutral time, place, or manner restriction is narrowly tailored to serve the government's legitimate interests. *Ward v. Rock Against Racism*, 491 U.S. 781, 798, 109 S. Ct. 2746, 2757 (1989). Turning first to the government's interest, as in *Packingham*, the State has a significant interest in preventing sex offenders from using the Internet to commit further crimes. 582 U.S. at 105–07, 137 S. Ct. at 1736–37. Turning next to narrow tailoring considerations, the condition imposed in *Mixell* met constitutional muster because "the monitoring program d[id] not prevent [the defendant on supervised release] from speaking online." 806 F. App'x at 185. Similarly, the condition at issue in *Bobal* was "not a complete bar" to the defendant's First Amendment rights. 981 F.3d at 977. These rulings necessarily indicate the special condition of probation ordering "no Internet access" does not meet narrow tailoring requirements since "its wide sweep precludes

access to a large number of websites that are most unlikely to facilitate the commission of a sex crime against a child." *Packingham*, 582 U.S. at 114, 137 S. Ct. at 1741 (J. Alito, concurring). We are therefore bound to vacate the trial court's imposition of this special condition of probation.

We emphasize that, although this particular special condition of probation is unlawful in its current form, the trial court has a plethora of options to serve this compelling state interest. *See United States v. Bobal*, 981 F.3d 971, 977 (11th Cir. 2020) (cleaned up) ("Nothing in *Packingham* undermines the settled principle that a district court may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens during supervised release."). For example, like the federal district court in *Bobal*, the trial court here could prohibit Defendant from "using a computer except for work with the prior permission of the . . . court." *Id.* at 976. Also, as in *Mixell*, the trial court here may impose a special condition of probation "monitoring his computer and Internet use." 806 F. App'x at 182. It could also prohibit Defendant from using those applications and websites that are likely to facilitate the commission of a sex crime against a child. *See Packingham*, 582 U.S. at 114, 137 S. Ct. at 1741. Or, as in *United States v. Wells*, the trial court here may prohibit Defendant from accessing "the Internet or any 'on-line computer service' at any location (including employment) without prior approval of the probation officer." 29 F.4th 580, 588 (9th Cir. 2022) (cleaned up). Moreover, the trial court could order regular searches of Defendant's computers and phones. *See* N.C. Gen. Stat. § 15A-

1343(b)(13). Indeed, the trial court could impose all of these special conditions of probation if it chooses to do so.

Finally, since we vacate and remand this matter to the trial court for the reasons above, we need not consider Defendant's other arguments.

## IV. Conclusion

After careful consideration, we hold that the length of the probationary period imposed by the trial court comports with N.C. Gen. Stat. § 15A-1343.2(d)(4) and thus affirm this portion of the judgment. However, we must remand the judgment to the trial court for correction of a clerical error. We are also bound to vacate and remand only the portion of the judgment containing the special condition of probation that Defendant have no access to the Internet or social media. On remand, the trial court may implement special conditions of probation that comply with constitutional requirements of narrow tailoring, such as those provided above.

AFFIRMED IN PART; REMANDED IN PART; VACATED AND REMANDED IN PART.

Judges ARROWOOD and COLLINS concur.

Report per Rule 30(e).