STATE OF NORTH CAROLINA v. NOEL JOHN TYSON

No. COA07-389

(Filed 1 April 2008)

## 1. Criminal Law— plea bargain involving multiple offenses— inadequate explanation

Convictions were remanded when there had been an earlier plea bargain involving multiple offenses and it was not clear whether defendant received a proper explanation of the full consequences of the agreement, and whether defendant relied on any resulting misrepresentations in tendering his guilty plea. The fact that a misrepresentation was inadvertent does not lessen its impact.

## 2. Drugs— sale near playground—playground defined

In a criminal action remanded on other grounds, there was sufficient evidence of possession of marijuana with intent to sell or deliver within 300 feet of a playground where the playground equipment consisted of a number of connected apparatuses. Although the statute refers to "separate apparatuses," the requirement will be satisfied if the recreation area contains three types of apparatuses as described in the statute, even if joined by common elements.

## 3. Sentencing— habitual felon—inconsistent birthdate on judgments

In an action remanded on other grounds, there was sufficient evidence that defendant had achieved the status of habitual felon even though the birthdate of defendant on one of the convictions differed from the other two. The names were the same and the three judgments were prima facie evidence that the defendant in those judgments was the same as in this case. Further discrepancies in the judgments were for the jury to consider.

Appeal by Defendant from judgment entered 25 September 2006 by Judge Jerry C. Martin in Superior Court, Beaufort County. Heard in the Court of Appeals 1 November 2007.

**STATE v. TYSON**

[189 N.C. App. 408 (2008)]

*Attorney General Roy Cooper, by Special Deputy Attorney General Donald R. Teeter, Sr. and Assistant Attorney General G. Mark Teague, for the State.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by John Keating Wiles, for Defendant.*

McGEE, Judge.

A jury found John Noel Tyson (Defendant) guilty on 25 September 2006 of one count of possession of marijuana with intent to sell or deliver marijuana within 300 feet of a playground and one count of having attained the status of habitual felon. The trial court sentenced Defendant to a term of 116 months to 149 months in prison. Defendant appeals.

The evidence contained in the record and presented at trial tends to show the following: Officer Jerry Davis (Officer Davis) of the Washington Police Department was conducting surveillance on 24 March 2005 at the intersection of Ninth and Gladden streets in Washington, North Carolina. Officer Davis testified that he had positioned himself in an upstairs apartment of a building overlooking the intersection. Officer Davis observed Defendant approach the intersection around 11:40 a.m. A few minutes later, a gray Ford Escort (the Escort) entered the intersection, and Defendant approached the Escort. Defendant reached into a brown paper bag and handed an object to the driver of the Escort. The driver handed Defendant paper currency in return. Defendant left the intersection at 11:50 a.m. and returned at 12:16 p.m. carrying a brown paper bag. Officer Davis contacted other police officers in the area and advised them to arrest Defendant. A police detective and two police officers arrived at the intersection, quickly exited their police vehicle, and apprehended Defendant at 12:23 p.m. When the officers arrested Defendant, Defendant dropped the brown paper bag he had been carrying. Police later discovered that the bag contained ten blue zipper baggies of marijuana.

Shortly after Defendant's arrest, Magistrate D.M. Hurst entered an order finding that probable cause existed to believe that Defendant had committed the offense of possession with intent to manufacture, sell, or deliver a controlled substance within 300 feet of a playground. This order was issued under file number 05 CR 51171 (file 51171). Five days later, Magistrate Donald R. Sadler issued an arrest warrant

**STATE v. TYSON**

[189 N.C. App. 408 (2008)]

for Defendant.[1] The warrant stated that there was probable cause to believe that on 24 March 2005, Defendant had committed the offense of possession with intent to manufacture, sell, or deliver marijuana within 300 feet of a playground, as well as the separate offense of sale of marijuana within 300 feet of a playground. This warrant was issued under file number 05 CR 51260 (file 51260). Neither the probable cause order in file 51171 nor the arrest warrant in file 51260 set out the specific facts that allegedly occurred on 24 March 2005 that gave rise to the various charges described in the two documents.

At the time of Defendant's arrest in connection with the above-described events, Defendant was awaiting trial on prior charges of possession with intent to sell and deliver cocaine, and of sale and delivery of cocaine. These charges were pending under file number 04 CRS 54772 (file 54772). Defendant had also been charged with having attained the status of habitual felon in connection with the cocaine charges. The habitual felon charge was pending under file number 05 CRS 2015 (file 2015).

Defendant pled guilty on 10 August 2005 to both cocaine charges in file 54772. According to the written plea transcript filled out by Superior Court Judge J. Richard Parker, the terms of Defendant's plea arrangement were as follows:

> Def[endant] will plead guilty to [possession with intent to sell or deliver] cocaine and sell/deliver cocaine. Def[endant] will receive consecutive sentences. State will dismiss sell + del. marijuana and [possession with intent to sell or deliver] marijuana charges and habitual felon indictment.

This written recitation of Defendant's plea agreement did not reference a file number associated with the marijuana charges to be dismissed. It is not clear that either the prosecutor or Defendant was aware that two separate criminal files had been created in connection with Defendant's actions on 24 March 2005.

In addition to the written recitation of Defendant's plea arrangement, the plea transcript also contained sections entitled "Pleas" and

---

1. This arrest warrant was not included in the record on appeal, apparently because Defendant was unaware of its existence at the time the record on appeal was submitted. Defendant asks that we take judicial notice of this arrest warrant, and we grant Defendant's request. *See State v. Thompson*, 349 N.C. 483, 497, 508 S.E.2d 277, 286 (1998) (stating that "[t]his Court may take judicial notice of the public records of other courts within the state judicial system"); N.C. Gen. Stat. § 8C-1, Rule 201(d) (2007) ("A court shall take judicial notice if requested by a party and supplied with the necessary information.").

STATE v. TYSON

[189 N.C. App. 408 (2008)]

"Superior Court Dismissals Pursuant to Plea Arrangement." In the "Pleas" section, Judge Parker noted that Defendant was pleading guilty to both offenses in file 54772, including possession with intent to sell or deliver cocaine, and sale or delivery of cocaine. In the "Superior Court Dismissals" section, Judge Parker noted that the habitual felon charge in file 2015 would be dismissed. Judge Parker also noted that charges of possession with intent to sell or deliver marijuana, and sale or delivery of marijuana, would likewise be dismissed. However, Judge Parker listed these two marijuana-related charges under file number 05 CRS 52733, which was a file number that was either incorrect or did not exist. The plea transcript shows that this file number was later struck through and the following notation was added: "incorrect file # per atty—disregard." A correct file number was never substituted for the marijuana charges that were to be dismissed. However, the arrest warrant issued in file 51260 indicates that the State did later dismiss the two marijuana charges associated with file 51260.

Two months later, on 10 October 2005, a grand jury indicted Defendant for possession with intent to sell or deliver a controlled substance (marijuana) within 300 feet of a playground. This indictment was issued under file 51171, the same file number appearing in the probable cause order issued by Magistrate D.M. Hurst on 24 March 2005. Defendant was also indicted on a new habitual felon charge. This indictment was issued under file number 05 CRS 4678 (file 4678). The grand jury issued a superseding indictment for the marijuana charge in file 51171 on 13 March 2006.

Defendant appeared for trial on 8 August 2006 on the marijuana charge in file.51171 and the habitual felon charge in file 4678. At that time, Defendant moved to dismiss the charges. Defendant claimed that pursuant to his earlier plea arrangement on the cocaine charges in file 54772, the State should have dismissed all the marijuana-related charges pending against him stemming from his 24 March 2005 arrest. Defendant also asked that his motion to dismiss be heard before Judge Parker, who had taken Defendant's guilty plea on the prior cocaine charges. The trial court denied Defendant's request and proceeded to hear arguments on Defendant's motion to dismiss.

The State disputed Defendant's characterization of the plea arrangement, claiming that the State had only agreed to dismiss the marijuana charges in file 51260, and not the marijuana charge in file 51171, for which Defendant was now on trial. According to the State,

Defendant's activities on 24 March 2005 had led to the creation of two different police files. First, between 11:40 a.m. and 11:50 a.m., Defendant allegedly possessed drugs, and then sold those drugs to the driver of the Escort. This series of events led to the creation of file 51260. In connection with this file, Defendant was charged with two offenses: possession with intent to sell or deliver marijuana within 300 feet of a playground, and sale of marijuana within 300 feet of a playground. Second, after Defendant left the intersection at 11:50 a.m., he returned at 12:16 p.m. with another brown paper bag containing marijuana. Defendant possessed this bag from 12:16 p.m. until he dropped the bag during his arrest at 12:23 p.m. This series of events led to the creation of file 51171. In connection with this file, Defendant was charged with one offense: possession with intent to sell or deliver marijuana within 300 feet of a playground. The State maintained that when Defendant pled guilty on 10 August 2005 to the cocaine charges in file 54772, the State only agreed to dismiss the marijuana charges in file 51260. In fact, according to the State, it could not have agreed to dismiss the marijuana charge in file 51171 because Defendant had not yet been indicted for that offense.

After hearing the State's explanation, the trial court denied Defendant's motion to dismiss. However, the trial court was unable to try Defendant at that time because Defendant was wearing his prison uniform and did not have a change of clothes.

Defendant was again called for trial on 22 August 2006 on the marijuana charge in file 51171 and the habitual felon charge in file 4678. At that time, the State informed the trial court that it had reached a new plea agreement with Defendant and recapped the series of events leading to Defendant's prior motion to dismiss:

> I think the basis of [Defendant]'s motion to dismiss was that we were—he was thinking that he was wrapping up all cases or was disposing of all pending matters at the time . . . . [O]ne of the things in [Defendant]'s motion is that, "Well, that case [in file 51171] was dismissed and was dismissed as part of that original plea deal." I think the argument from the State would be it didn't exist at that time . . . . However, recognizing that [Defendant] sought to clean up everything he had out there in August, the proposal I have made . . . is that . . . . he'll plead to the Possession with Intent to Sell and Deliver Marijuana [in file 51171] today, [and] the Habitual Felon [in file 4678], and consolidate these offenses with the ones in August for a sentence[.]

The trial court then began the process of accepting Defendant's guilty plea. However, a dispute arose as to the specific terms of the plea agreement. The trial court then refused to accept any further plea agreements, stating that Defendant would be tried on both the marijuana charge in file 51171 and the habitual felon charge in file 4678.

Defendant was called for trial for a third time on 21 September 2006 on the marijuana charge in file 51171 and the habitual felon charge in file 4678. On 25 September 2006, a jury found Defendant guilty of possession of marijuana with intent to sell or deliver within 300 feet of a playground in file 51171, and also found Defendant guilty of having attained habitual felon status in file 4678. Defendant appeals.

I.

[1] Defendant first argues that the trial court erred by denying his motion to dismiss the charges in files 51171 and 4678 because these charges were encompassed in his prior plea arrangement. Defendant further argues that the State's failure to adhere to the plea arrangement violated his constitutional right to due process.

A plea agreement, although it "arises in the context of a criminal proceeding, . . . remains in essence a contract." *State v. Blackwell*, 135 N.C. App. 729, 731, 522 S.E.2d 313, 315 (1999), *remanded on other grounds*, 353 N.C. 259, 538 S.E.2d 929 (2000). As such, "judicial interpretation of plea agreements is largely governed by the law of contracts." *United States v. Martin*, 25 F.3d 211, 216-17 (4th Cir. 1994). *See also State v. Lacey*, 175 N.C. App. 370, 377, 623 S.E.2d 351, 356 (2006) (stating that plea agreements are to be analyzed using principles of contract law). However, our Courts have also recognized that a plea agreement "is markedly different from an ordinary commercial contract" because "[b]y pleading guilty, a defendant waives many constitutional rights[.]" *Blackwell*, 135 N.C. App. at 731, 522 S.E.2d at 315. Therefore, according to the United States Supreme Court, the plea bargain "phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Santobello v. New York*, 404 U.S. 257, 262, 30 L. Ed. 2d 427, 433 (1971). Although a defendant has no constitutional right to have a guilty plea accepted by a trial court, *see id.*, both the defendant and the State are bound by the terms of the plea agreement once the defendant has entered a guilty plea and such plea has been accepted by the trial court. *See State v. Collins*, 300 N.C.

142, 148, 265 S.E.2d 172, 176 (1980) (holding that the terms of a plea agreement become binding after "the actual entry of the guilty plea by [the] defendant"); *Blackwell*, 135 N.C. App. at 731, 522 S.E.2d at 315 (stating that "due process mandates strict adherence to any plea agreement").

In *Santobello*, the United States Supreme Court vacated the defendant's conviction where prosecutors had violated the terms of the defendant's plea agreement. Under the terms of the agreement, the defendant agreed to plead guilty in New York state court to a certain offense in exchange for the prosecutor's agreeing to make no sentencing recommendation to the trial court. *Santobello*, 404 U.S. at 258, 30 L. Ed. 2d at 431. The defendant pled guilty to the offense as agreed. However, a different prosecutor unfamiliar with the plea agreement appeared at the defendant's sentencing hearing and recommended that the trial court impose the maximum sentence. *Id.* at 258-59, 30 L. Ed. 2d at 431. The trial court then imposed the maximum sentence over the defendant's objection. *Id.* at 259-60, 30 L. Ed. 2d at 431-32.

The Supreme Court began its opinion by lamenting "another example of an unfortunate lapse in orderly prosecutorial procedures[.]" *Id.* at 260, 30 L. Ed. 2d at 432. The Court held that requirements of fairness and due process apply to the negotiation and tender of a plea bargain. *Id.* at 261-62, 30 L. Ed. 2d at 432-33. While the Court noted that the process due a defendant would vary in different circumstances, it was nonetheless clear that "a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 30 L. Ed. 2d at 433. The State argued that its breach of the plea agreement was inadvertent, but the Court was not persuaded. According to the Court, "[t]he staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done. That the breach of agreement was inadvertent does not lessen its impact." *Id.* Because the State failed to fulfill its promise, the Court vacated the judgment and remanded the case for appropriate relief. *Id.* at 262-63, 30 L. Ed. 2d at 433.

In *Santobello*, it was clear that the prosecutors violated the explicit terms of the defendant's plea agreement. Our own Court has also extended the logic of *Santobello* to apply where the State violates the "spirit," though not the express terms, of the plea agreement. In

*Blackwell*, the defendant was charged with a number of crimes in connection with a fatal drunk-driving accident. As part of a plea agreement, the defendant pled guilty to some of the offenses, including felonious impaired driving, and agreed to stand trial on four counts of assault with a deadly weapon and one count of first-degree murder under the felony-murder rule. *Blackwell*, 135 N.C. App. at 730, 522 S.E.2d at 314. In exchange, the State agreed not to use the felonious impaired driving charge as the predicate felony for the felony murder charge. *Id.* at 730, 522 S.E.2d at 315. At trial, the State used the four assaults as the predicate felonies for the felony murder charge. However, the State also used the defendant's guilty plea to the felonious impaired driving charge to prove that the defendant acted with culpable negligence, which was a necessary element of the assault charges. *Id.* at 730-31, 522 S.E.2d at 315. The defendant was later convicted of the assault and murder charges. *Id.* at 730, 522 at 314.

On appeal, we agreed with the defendant that the derivative use of his guilty plea violated his plea agreement. Although the express terms of the plea agreement did not bar the State's specific use of the defendant's guilty plea, we found that the State violated the spirit of the plea agreement because the defendant could have reasonably interpreted the agreement to bar all uses of his guilty plea:

> [D]ue process mandates strict adherence to any plea agreement. Moreover, this strict adherence "require[s] holding the [State] to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements." While the plea agreement here may not have been ambiguous, it was imprecise in light of what the State intended to argue at trial.

> The State promised not to use the felonious impaired driving charge "as a theory of first degree murder" for its prosecution of [the] defendant under felony murder. The defendant quite reasonably interpreted this to mean that the State promised not to use the felonious impaired driving in any way, shape, or form— directly or derivatively—to prove felony murder.

*Id.* at 731, 522 S.E.2d at 315 (citation omitted) (quoting *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986)). The State argued that if the defendant had wanted to preclude the State from using his guilty plea in any way, he should have negotiated this as part of his plea agreement. We again disagreed:

The State suggests that [the] defendant should have bargained for this interpretation. But [the] defendant should not be forced to anticipate loopholes that the State might create in its own promises. . . . [E]ven if the State did not violate the express terms of the plea agreement, it did violate the *spirit* of that agreement. We therefore hold that the State violated [the] defendant's plea agreement.

*Id.* at 731-32, 522 S.E.2d at 315 (citations omitted).

Neither *Santobello* nor *Blackwell* are directly on point in this case. Defendant does not allege a violation of the specific terms of his plea agreement, as in *Santobello*, nor does he allege that the State has made an improper derivative use of his guilty plea, as in *Blackwell*. However, we find that the general principles of due process and prosecutorial responsibility embodied in those two opinions guide our determination in the present case.

Courts have recognized that "[w]hile the government must be held to the promises it made, it will not be bound to those it did not make." *United States v. Fentress*, 792 F.2d 461, 464 (4th Cir. 1986). Further, "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 81 L. Ed. 2d 437, 443 (1984). However, these general rules do not bar relief for a defendant where the defendant alleges that he was induced into accepting a plea agreement based on misrepresentations made by the State, thus depriving the defendant of a full understanding of the consequences of his guilty plea. *See Mabry*, 467 U.S. at 509, 81 L. Ed. 2d at 443 (stating that "only when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause"); *Brady v. United States*, 397 U.S. 742, 755, 25 L. Ed. 2d 747, 760 (1970) (defining the standard by which to judge the voluntariness of a guilty plea as follows: " '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats . . . [or] misrepresentation' " (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds*, 356 U.S. 26, 2 L. Ed. 2d 579 (1958))). *Cf. Lacey*, 175 N.C. at 377, 623 S.E.2d at 356 (applying contract law principles to plea agreements to conclude that " 'neither side should be able, any more than would be private contracting parties, unilater-

ally to renege or seek modification simply because of *uninduced* mistake or change of mind' " (quoting *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004))).

On the record before us, it appears that Defendant's 10 August 2005 guilty plea to the cocaine charges in file 54772 may have been induced by misrepresentations made by the State. Under *Santobello*, Defendant was entitled to whatever process was "reasonably due" when negotiating his plea arrangement and entering his guilty plea. *Santobello*, 404 U.S. at 262, 30 L. Ed. 2d at 433. Given the similarity of the offenses allegedly committed by Defendant on 24 March 2005 and the close temporal proximity of those offenses, we believe that Defendant was entitled to an explanation that the State was only agreeing to dismiss the marijuana charges in file 51260, and that the State might later choose to prosecute Defendant for the marijuana offense described in file 51171. This type of disclosure is consistent with holding the State to "a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements," *Blackwell*, 135 N.C. App. at 731, 522 S.E.2d at 315 (quoting *Harvey*, 791 F.2d at 300), and also ensures that a defendant will not "be forced to anticipate loopholes that the State might create in its own promises." *Id.* Without such an explanation, the State might have led Defendant to reasonably believe that his guilty plea encompassed all the marijuana-related charges that Defendant faced in connection with the events of 24 March 2005. Under such circumstances, Defendant might not have fully understood the direct consequences of his guilty plea.[2] *See Mabry*, 467 U.S. at 509, 81 L. Ed. 2d at 443.

It is unclear from the record whether Defendant received a proper explanation from the State regarding the full consequences of his plea agreement, and whether Defendant relied on any resulting misrepresentations in tendering his guilty plea. We therefore remand this case to the trial court for a determination of: (a) whether, consistent with the due process principles outlined above, Defendant was fully apprised of the consequences of his 10 August 2005 guilty plea, including any outstanding criminal liability he might have faced with respect to the marijuana offense described in file 51171; and (b) if not, whether Defendant could have reasonably interpreted his plea agreement, based on the limited information he had at the time he

---

2. Indeed, the State acknowledged Defendant's confusion when it admitted to the trial court that "[Defendant] was thinking that he was wrapping up all cases or was disposing of all pending matters at the time," and that "[Defendant] sought to clean up everything he had out there in August[.]"

entered his guilty plea, to preclude the State from prosecuting him in connection with the marijuana offense described in file 51171. *See Blackwell*, 135 N.C. App. at 731, 522 S.E.2d at 315 (focusing on whether the defendant had "reasonably" interpreted his plea agreement as barring the State from undertaking certain future actions). We acknowledge that any misrepresentation made to Defendant in this case was likely an inadvertent result of one prosecutor having incomplete knowledge of all criminal files connected to Defendant's actions on 24 March 2005. However, the fact that a misrepresentation "was inadvertent does not lessen its impact." *Santobello*, 404 U.S. at 262, 30 L. Ed. 2d at 433.

If the trial court answers the above questions in the affirmative, we leave it to the trial court's discretion to select an appropriate remedy. *See id.* at 262-63, 30 L. Ed. 2d at 433; *Blackwell*, 135 N.C. App. at 732, 522 S.E.2d at 316. A trial court's typical options in such cases include either granting specific performance of the plea agreement in accordance with the defendant's reasonable interpretation of that agreement, or allowing rescission of the defendant's guilty plea. *See id.*

II.

Defendant raises two additional arguments with regard to his convictions. We address these arguments in the event that the trial court finds that Defendant received due process with regard to his plea agreement and was not misled by any misrepresentations on the part of the State.

A.

**[2]** Defendant first argues that the trial court erred by denying his motion to dismiss the charge of possession with intent to sell or deliver marijuana within 300 feet of a playground. Defendant contends that the State did not introduce sufficient evidence to support a conviction on this charge.

To survive a motion to dismiss based on insufficient evidence, the State must present "substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence exists if, considered in the light most favorable to the State, the evidence "gives rise to a reasonable inference of guilt[.]" *State v. Jones*, 303 N.C. 500, 504, 279 S.E.2d 835, 838 (1981). However, a

defendant's motion to dismiss must be granted "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it[.]" *Powell*, 299 N.C. at 98, 261 S.E.2d at 117.

Under N.C. Gen. Stat. § 90-95(a)(1) (2005), "it is unlawful for any person . . . [t]o manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance[.]" Marijuana is a controlled substance. *See* N.C. Gen. Stat. § 90-94 (2005). Further, under N.C. Gen. Stat. § 90-95(e)(10) (2005):

> Any person 21 years of age or older who commits an offense under G.S. 90-95(a)(1) on property that is a playground in a public park or within 300 feet of the boundary of real property that is a playground in a public park shall be punished as a Class E felon. . . . [T]he term "playground" means any outdoor facility (including any parking lot appurtenant thereto) intended for recreation open to the public, and with any portion thereof containing three or more separate apparatuses intended for the recreation of children including, but not limited to, sliding boards, swingsets, and teeterboards.[3]

Defendant argues that the State did not introduce sufficient evidence that he possessed marijuana within 300 feet of a "playground," as that term is defined in the statute.

At trial, the State introduced a photograph of the "playground" near which Defendant allegedly possessed marijuana. The playground appears to contain a number of different recreation apparatuses, including two slides, at least three sets of climbing stairs, monkey bars, two firemen's poles, a small gazebo, and a tic-tac-toe game. However, these objects are all connected in one large structure and do not stand on their own. Defendant argues that such a structure does not satisfy the statutory definition of "playground," which requires "three or more *separate* apparatuses." N.C.G.S. § 90-95(e)(10). We disagree.

Our Courts have consistently recognized that "[c]riminal statutes are generally construed narrowly against the State and in favor of the accused." *State v. Dent*, 174 N.C. App. 459, 467, 621 S.E.2d 274, 280 (2005). However,

---

3. The General Assembly recently amended N.C.G.S. § 90-95(e)(10) to remove the sentence defining the word "playground." This amendment only applies to offenses committed after 1 December 2007, and is therefore inapplicable to the present case. *See* 2007 N.C. Sess. Laws ch. 375, §§ 1-2.

"[t]he canon in favor of strict construction [of criminal· statutes] is not an inexorable command to override common sense and evident statutory purpose. . . . Nor does it demand that a statute be given the 'narrowest meaning'; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers."

*Id.* at 467, 621 S.E.2d at 280 (quoting *United States v. Brown*, 333 U.S. 18, 25-26, 92 L. Ed. 442, 448, *reh'g denied*, 333 U.S. 850, 92 L. Ed. 2d 1132 (1948)). We find that the evident statutory purpose of N.C.G.S. § 90-95(e)(10) is to protect young children from being exposed to illicit drug activity while playing at public recreation areas. Consistent with this legislative intent, we decline to interpret the words "separate apparatuses" in such a narrow manner as to require each apparatus to be entirely physically separate in order to satisfy the statutory definition of "playground." So long as a recreation area contains three types of apparatuses as described in the statute, the requirement of having "three or more separate apparatuses" will be satisfied, even if these apparatuses are joined by some common elements. In this case, we find that the State presented substantial evidence that the recreational facility in question contained at least three separate apparatuses. The State has thus satisfied its burden, and Defendant's contention is without merit.

B.

[3] Defendant next argues that the trial court erred by denying his motion to dismiss the charge of having attained the status of habitual felon. Defendant contends that the State did not introduce sufficient evidence to support a conviction on this charge.

Under N.C. Gen. Stat. § 14-7.1 (2007), "[a]ny person who has been convicted of or pled guilty to three felony offenses . . . is declared to be an habitual felon." At trial, the State introduced the following evidence: (1) a criminal judgment from 22 October 1998 stating that Noel John Tyson, a Black male born on 24 December 1979, pled guilty to the offense of possession with intent to sell or deliver cocaine; (2) a criminal judgment from 21 August 2000 stating that Noel John Tyson, a Black male born on 24 December 1979, pled guilty to the offense of possession with intent to sell or deliver cocaine; and (3) a criminal judgment from 7 October 2003 stating that Noel John Tyson, a Black male born on 24 December 1978, pled guilty to the offense of possession with intent to sell or deliver cocaine.

**STATE v. TYSON**

[189 N.C. App. 408 (2008)]

Defendant notes that according to the judgments, two of the offenses were committed by a man born on 24 December 1979, and one of the offenses was committed by a man born on 24 December 1978. Defendant argues that because the State offered no evidence to explain or contradict the age discrepancy in the judgments, the State did not introduce substantial evidence that he was the perpetrator of each of those offenses. We disagree. When the State introduces court records of prior judgments to prove that a defendant has committed three prior felonies for the purposes of the habitual felon statute,

> [t]he original or certified copy of the court record, bearing the same name as that by which the defendant is charged, shall be prima facie evidence that the defendant named therein is the same as the defendant before the court, and shall be prima facie evidence of the facts set out therein.

N.C. Gen. Stat. § 14-7.4 (2007). Each of the three judgments introduced by the State listed the name of the defendant as "Noel John Tyson," which is the same name by which Defendant here was charged. Therefore, pursuant to this statute, the three judgments were prima facie evidence that the defendant named in those judgments was the same Defendant as in the current case. Defendant introduced no evidence to rebut this prima facie showing by the State.[4] Any further discrepancies in the judgments were for the jury to consider. *See State v. Petty*, 100 N.C. App. 465, 470, 397 S.E.2d 337, 341 (1990) (where three prior judgments introduced by the State to prove an habitual felon charge contained a discrepancy regarding the defendant's age, the Court held that "any discrepancy between the actual age of the defendant at the time of conviction and his age as reflected on the record of conviction, goes to the weight of the evidence and not its admissibility"). We therefore find that the State presented substantial evidence that Defendant had attained the status of habitual felon. Defendant's contention is without merit.

In sum, we find that the trial court committed no error with regard to the issues discussed in Parts II.A and II.B of this opinion. We remand the case to the trial court to make additional findings of fact and conclusions of law with regard to the issues discussed in Part I of this opinion.

---

4. We have previously held that N.C.G.S. § 14-7.4 does not unconstitutionally shift the burden of proof to a criminal defendant. *See State v. Hairston*, 137 N.C. App. 352, 355-56, 528 S.E.2d 29, 31-32 (2000).

Remanded.

Judges HUNTER and BRYANT concur.