STATE OF NORTH CAROLINA v. VALERIE DAWN RATHBONE KING

No. COA11-526

(Filed 7 February 2012)

**1. Criminal Law—plea agreement—specific performance of provision—risk conviction—plea agreements encouraged**

The superior court erred in a trafficking in opiate, possession of drug paraphernalia, and simple possession of clonazepam case by setting aside a plea agreement and proceeding to trial. Defendant's motion for return of seized property requested specific performance of a provision of the plea agreement and requiring defendant to risk conviction merely by seeking specific performance of the State's obligation under the plea agreement would chill the practice of plea bargaining, which should be encouraged.

**2. Criminal law—plea agreement—specific performance— funds returnable**

The superior court erred in a trafficking an opiate, possession of drug paraphernalia, and simple possession of clonazepam case by denying specific performance of a plea agreement to return money which had been seized from defendant or which was derived from money seized from defendant. It was within the State's power to return funds in the amount seized from defend-

STATE v. KING

[218 N.C. App. 385 (2012)]

ant, regardless of whether the *exact* cash seized could have been returned.

Appeal by defendant from order filed 16 June 2010 by Judge Bradley B. Letts and judgment entered 9 December 2010 by Judge James U. Downs in Haywood County Superior Court. Heard in the Court of Appeals 25 October 2011.

*Attorney General Roy Cooper, by Special Deputy Attorney General E. Burke Haywood, for the State.*

*Kevin P. Bradley, for defendant-appellant.*

CALABRIA, Judge.

Valerie Dawn Rathbone King ("defendant") appeals from an order setting aside the plea disposition and a judgment entered upon jury verdicts finding her guilty of trafficking an opiate, possession of drug paraphernalia, and simple possession of clonazepam. We vacate the judgment and reverse the order.

## I. Background

As a result of surveillance conducted on defendant's home and others residing within her home, defendant, Renee Williams ("Williams") and Leonard Caskey were stopped by law enforcement with the Waynesville Police Department ("WPD"), on 4 November 2008, while riding in a vehicle. Williams, the driver of the car, consented to a search of the car. During the search, the officers found cash, two pill bottles and 105 marijuana seeds. According to the labels on the bottles, one was prescribed to Robert Blanton ("Blanton") and contained eight hydrocodone tablets. The other pill bottle was prescribed to Vonda Williams and contained a half tablet of Oxycontin. Subsequently, defendant was detained and her cash, jewelry and drugs were seized. The total amount of cash seized from defendant on 4 November was $6,150.

On 14 November 2008, pursuant to a warrant, defendant's home was searched. As a result of the search, officers found ammunition, marijuana rolling papers and a Tylenol bottle containing Tylenol and two other pills in defendant's home. Officers also searched an outside storage building where they found scales and a grinder, both of which were characterized as drug paraphernalia and a bottle of cough syrup containing hydrocodone prescribed to Blanton. Finally, the officers seized $873 from defendant.

For the 4 November offenses, defendant was indicted for two counts of trafficking, possession with intent to sell and deliver a controlled substance, and possession with intent to manufacture, sell and/or deliver marijuana. For the 14 November offenses, defendant was indicted for trafficking in opium or heroin, possession of drug paraphernalia and simple possession of Clonazepam, a schedule IV controlled substance.

On 3 August 2009, the prosecutor and defendant's attorney informed the Court of the terms and conditions of defendant's *Alford* plea. The prosecutor agreed if defendant pled guilty to one count of misdemeanor possession of a schedule III controlled substance, the State would dismiss the remaining charges pursuant to the plea agreement. One of the conditions of the plea agreement was that the State agreed to return defendant's personal property, money and jewelry. The plea agreement was signed by the prosecutor and defendant and accepted by Judge Bradley B. Letts ("Judge Letts").

On 6 August 2009, Judge Letts ordered defendant to serve a 45-day sentence, suspended the sentence, placed defendant on supervised probation for twelve months, and various other conditions were imposed. Judge Letts included in the judgment "defendant to receive her personal property, which is money and jewelry, from the [WPD]; said money to be paid to defendant's fines and costs." Defendant's monetary obligations totaled $1,758.50.

On 28 August 2009, defendant filed a motion for return of seized property. That same day, Judge Letts ordered that the balance of the cash, after payment of fines and costs that were held by the WPD, was to be turned over to the defendant. Included in Judge Letts's order to return defendant's seized property, was an exception to returning the balance of the funds to defendant. If the funds had been forfeited, the exception required the district attorney to provide documentation of the forfeiture to defendant's counsel. On 1 September 2009, the District Attorney filed a receipt documenting that $6,150 seized from defendant had been forfeited to the Drug Enforcement Administration ("DEA") for federal forfeiture proceedings.

Defendant complied with the terms and conditions of her probation, her probation was modified and she was transferred to unsupervised probation. However, the State did not return the balance of the funds or any funds to defendant. On 23 February 2010, defendant, represented by new counsel, re-filed the motion for return of seized property.

On 27 April 2010, at a hearing before Judge Letts, the State indicated that the $6,150, seized as result of the 4 November 2008 arrest, had been turned over to the DEA on 26 November 2008 pursuant to federal law. Although the $873 seized as a result of the 14 November 2008 arrest remained in the custody of WPD, the North Carolina Department of Revenue had already agreed to seize those funds, but had not yet taken possession of them. On 23 April 2009, the DEA disbursed $4800.68 to WPD.

On 16 June 2010, Judge Letts entered an order finding that the State had breached the plea arrangement. However, Judge Letts also found that specific performance was not a viable option and therefore the only option was rescission of the plea agreement. The court withdrew the plea and all the charges in the indictments that had been dismissed were reinstated, calendared and set for trial by the State.

On 3 December 2010, defendant made a motion to dismiss all charges, claiming trial would subject her to double jeopardy. On 9 December 2010, pursuant to defendant's motion, Judge James U. Downs dismissed all charges stemming from the events of 4 November 2008, but allowed the State to proceed to trial on all charges in the indictment with the 14 November 2008, date of offense. The jury returned verdicts finding defendant guilty of all charges: trafficking in opium or heroin, misdemeanor possession of drug paraphernalia and misdemeanor simple possession of a schedule IV controlled substance. Defendant was sentenced to a minimum of 225 months and a maximum of 279 months in the Department of Correction. In addition, she was also fined $500,000. Defendant appeals.

## II. Judicial Notice

On 21 October 2011, defendant filed a motion requesting the Court take judicial notice of the records of the Clerk of Superior Court in Haywood County showing that defendant paid $1,758.50. This amount was the total amount due for court costs and fines on the 6 August 2009 judgment. With this payment, defendant had completed all monetary obligations from the original judgment.

Judicial notice is governed by statute, indicating "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.C. Gen. Stat. § 8C-1, Rule 201(b) (2011). "This Court may take judicial notice of the public records of other courts within the state judicial system."

*State v. Thompson*, 349 N.C. 483, 497, 508 S.E.2d 277, 286 (1998). If a party requests that the court take judicial notice and provides the necessary information, it is mandatory that a court take judicial notice. N.C. Gen. Stat. § 8C-1, Rule 201(d) (2011). "Judicial notice may be taken at any stage of the proceeding[,]" including on appeal. N.C. Gen. Stat. § 8C-1, Rule 201(f) (2011); *State ex rel. Utilities Comm. v. Southern Bell Telephone Co.*, 289 N.C. 286, 288, 221 S.E.2d 322, 323 (1976).

Here, the copy of the defendant's payment of the $1,758.50 is marked "True Copy" and signed by an assistant clerk. Therefore, the document is a public record and we may take judicial notice of the fact that defendant paid $1,758.50 to Haywood County for the monetary obligations of the original judgment. The State does not object to the Court taking judicial notice of the copy of defendant's payment of $1,758.50 to Haywood County Superior Court. Therefore, we grant defendant's motion.

### III.  Withdrawal of Plea Agreement

**[1]** Defendant alleges the superior court erred by setting aside the plea agreement and proceeding to trial when defendant's motion requested specific performance of a provision of the plea agreement. We agree.

A plea agreement is "in essence a contract[,]" and thus the law of contracts governs judicial interpretation of plea agreements. *State v. Tyson*, 189 N.C. App. 408, 413, 658 S.E.2d 285, 289 (2008). Normally, plea agreements are in the form of unilateral contracts and the "consideration given for the prosecutor's promise is not defendant's corresponding promise to plead guilty, but rather is defendant's actual performance by so pleading." *State v. Collins*, 300 N.C. 142, 149, 265 S.E.2d 172, 176 (1980). Once defendant begins performance of the contract "by pleading guilty or takes other action constituting detrimental reliance upon the agreement[,]" the prosecutor can no longer rescind his offer. *Id.*

Due process requires strict adherence to a plea agreement and "this strict adherence requires holding the State to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements." *State v. Blackwell*, 135 N.C. App. 729, 731, 522 S.E.2d 313, 315 (1999) (internal quotations, brackets and citation omitted). Therefore, "the risk of mistake in plea agreements lies with the State, and the State may not withdraw or have set aside a plea

agreement based upon an uninduced mistake contained therein."
*State v. Rico*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (2012).

In *Rico*, the defendant and the State entered into a plea agreement whereby the State used the defendant's use of a deadly weapon as an aggravating factor. *Id.* However, our statutes indicated that "the State could not use defendant's use of a firearm as an aggravating factor to enhance his sentence for voluntary manslaughter." *Id.* The Court recognized that the State was in a better position to know the law and refused to "relieve the State of what it now considers a bad bargain where the plea agreement was the result of uninduced mistake." *Id.* (citation omitted).

In the instant case, defendant and the State entered into a plea agreement and defendant was sentenced accordingly. As a condition of the agreement, the State agreed to return defendant's money and jewelry. In August 2009 and again in February 2010, defendant sought specific performance of the agreement. Contrary to the terms of the agreement, the State did not return the balance of defendant's funds. Therefore, the State breached the plea agreement.

At the April 2010 hearing, Judge Letts found:

> 21. That the prosecuting attorney did not take steps to ascertain whether or not, in fact, [the funds] were still in the custody of the [WPD], and the [WPD] took no steps to inform the District Attorney's Office that they no longer had custody of these funds.

> 22. That the [c]ourt finds that, at the time of the entry of the plea on August 3, 2009, there was a mutual mistake of fact with respect to the plea arrangement in that the $6,150.00 was no longer in the custody of the [WPD] and had, in fact, been previously seized by the [DEA] and forfeited.

Although Judge Letts found that the district attorney "clearly breached the plea arrangement[,]" and that defendant was entitled to a remedy, since the judge stated that specific performance was not appropriate, "the only option available to the [c]ourt . . . would be rescission of the plea agreement."

While the mistake in the instant case was one of fact, not law, the State was still in a better position to know whether WPD still had possession of the funds. At the time the district attorney entered into the plea agreement, he was capable of confirming the status of the funds

prior to agreeing to return them to defendant. The money was seized from defendant and sent to the DEA the same month. The parties did not enter into the plea agreement until approximately nine months after the forfeiture, in August 2009. The State could have easily confirmed the availability of the funds prior to the execution of the agreement but failed to do so. Therefore, the State must bear the risk of that mistake and the Court erred by rescinding the plea agreement based on a mistake of fact.

When the State "fails to fulfill promises made to the defendant in negotiating a plea bargain" the defendant is entitled to relief, typically in the form of "specific performance of the plea agreement or withdrawal of the plea itself (i.e. rescission)." *Blackwell*, 135 N.C. App. at 732, 522 S.E.2d at 316 (internal citations omitted). Other courts have found that while rescission is an available remedy, it is not always appropriate under the circumstances. When a prosecutor breaches a plea agreement, "the purpose of the remedy is, to the extent possible, to repair the harm caused by the breach." *Buckley v. Terhune*, 441 F.3d 688, 699 (9th Cir. 2006) (internal quotations and citations omitted). In *Buckley*, the defendant had already fulfilled his obligations under the plea agreement and the Court held rescission could not repair the harm, but rather the "harm [could] best be addressed by holding the state to its agreement and affording [the defendant] the benefit of his bargain[,]" i.e. specific performance. *Id. See also Gibson v. State*, 803 S.W.2d 316, 318 (Tex. Crim. App. 1991) (where the appellant had "served a substantial portion of his sentence under the guilty plea" the Court found that specific performance was the only appropriate remedy.); *State v. Gaddy*, 858 S.W.2d 81, 84 (Ark. 1993) (where the Court stated that rescission seemed "paltry relief indeed for the state's breach of a binding plea agreement.").

In the instant case, Judge Letts found that specific performance was not a viable option, and therefore rescinded the agreement. While Courts have found that either rescission or specific performance are appropriate remedies for breach of a plea agreement, we find that rescission was not appropriate here. Just as the court held rescission could not repair the harm to the defendant in *Buckley*, the remedy of rescission, in the instant case, could also not repair the harm caused by the State's breach. Defendant had already completed approximately nine months of her probation and complied with all the terms of the plea agreement, including payment in full for all her fines and costs. The State failed to adhere to its end of the bargain. Rescission of the plea agreement created a situation where defendant

not only received an increased sentence but was also ordered to pay a fine of $500,000.

This Court has stated that the "defendant should not be forced to anticipate loopholes that the State might create in its own promises." *Blackwell*, 135 N.C. App. at 731, 522 S.E.2d at 315. Specific performance only compels the State to do what it should have done initially, comply with the terms of the plea agreement and return the balance of the funds seized from defendant. *See Rose v. Rose*, 66 N.C. App. 161, 165, 310 S.E.2d 626, 629 (1984) (internal quotations and citations omitted) (where this Court held that specific performance "does no more than compel [defendant] to do precisely what he ought to have done without being coerced by the court."). Furthermore, we agree with defendant that requiring a defendant to risk conviction merely by seeking specific performance of a state's obligation under a plea agreement would chill "[t]he economically sound and expeditious practice of plea bargaining [which] should be encouraged, with both sides receiving the benefit of that bargain." *State v. Alexander*, 359 N.C. 824, 831, 616 S.E.2d 914, 919 (2005).

Therefore, Judge Letts's ruling, that the only option available to defendant was rescission, was error. We reverse Judge Letts's order, reinstate the plea agreement and vacate the 9 December 2010 judgment.

## IV. Specific Performance of Plea Agreement

[2] Defendant contends the superior court erred in denying specific performance of the plea agreement to return the money which had been seized from defendant or which was derived from money seized from defendant. Specifically, defendant contends the court's findings of fact did not support its conclusion of law that specific performance was unavailable to defendant. We agree.

On appeal, a trial judge's "findings of fact are conclusive . . . if supported by competent evidence" but its "conclusions of law are reviewed *de novo.*" *State v. Ripley*, 360 N.C. 333, 339, 626 S.E.2d 289, 293 (2006). When reviewing a matter *de novo*, "the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632—33, 669 S.E.2d 290, 294 (2008) (internal quotations and citations omitted).

This Court has not previously addressed the issue of returning a defendant's seized property pursuant to a plea agreement. Cases in other jurisdictions dealing with the return of a defendant's seized property are distinguishable because they do not involve a defendant

seeking return of seized property pursuant to a plea agreement with the State.

In North Carolina, "[a]ny property seized by a State, local, or county law enforcement officer shall be held in safekeeping . . . until an order of disposition is properly entered by the judge." N.C. Gen. Stat. § 90-112(c) (2011). The statute also indicates that any money "acquired, used, or intended for use, in selling, purchasing, manufacturing, compounding, processing, delivering, importing, or exporting a controlled substance" is subject to forfeiture. N.C. Gen. Stat. § 90-112(a)(2) (2011).

In the instant case, instead of holding the funds in safekeeping until a disposition was entered by the judge, the WPD sent the funds to the DEA in November 2008, approximately four months before defendant was even indicted for the charges. Pursuant to the U.S. Department of Justice Equitable Sharing program, the WPD submitted a request to the DEA for a return of a portion of the funds. On 23 April 2009, the DEA disbursed a total of $4,800.68 to the WPD. The money was transferred upon an "Application for Transfer of Federally Forfeited Property" which requires funds that are transferred back to the police department to be used for law enforcement purposes such as salaries, purchase of equipment, and purchase of vehicles.

Judge Letts found

> 20. That, contrary to State law, N.C. Gen. Stat. § 90-112(c), the $6,150.00 was not maintained in the custody of the [WPD], and the District Attorney's Office was unaware that the money had been transmitted and forfeited to the [DEA]. Specifically, the District Attorney's Office and Defendant's attorney . . . worked under the assumption that all monies were still present at the [WPD].
>
> . . .
>
> 29. . . . While the [WPD] did not adhere to N.C. Gen. Stat. § 90-112(c), the [WPD] was acting consistent with federal drug seizure and forfeiture provisions. The conduct of the [WPD] to turn those funds over was in all respects lawful and allowed by federal law. Federal law is in conflict with the state law and, as such, this Court no longer has any control over those federally-forfeited funds and, as such, specific performance is no longer an option for this Court.

The court concluded that since the particular funds seized from defendant were no longer available, it did not have the option to order specific performance of the plea agreement.

Judge Letts correctly stated that the particular funds seized were no longer available. However, there is no requirement that the *exact funds seized* must be returned to defendant and the State cannot avoid its obligation on this basis. "The majority view is that a [criminal defendant] is entitled to 'return' of the money, even though the government no longer has the [defendant's] specific currency." Colleen P. Murphy, *Money as a "Specific" Remedy*, 58 Ala. L. Rev. 119, 148-49 (2006) (also recognizing that since "the seized currency was not lost or destroyed but instead deposited by the government into an account," then "[a]llowing the plaintiff to recover money for cash taken by the government is functionally indistinguishable from allowing the plaintiff to recover account funds in a bank account that the government seized."); *See also U.S. v. Minor*, 228 F.3d 352, 355 (4th Cir. 2000) (court reasoned that because plaintiff sought return of "the very thing" to which he claimed an entitlement, he was not seeking "damages in substitution for a loss").

While we recognize that in forfeiting the funds to the DEA, the WPD was acting pursuant to federal law, we do not find that this forfeiture precludes the State from adhering to the plea agreement. Money is fungible. Defendant is not seeking return of a unique item. It is within the State's power to return funds in the amount seized from defendant, regardless of whether the *exact* cash seized can be returned. Therefore we hold that, pursuant to the plea agreement, the State must return all funds seized to defendant.

## V. Conclusion

Defendant sought specific performance, not rescission of the plea agreement. Judge Letts erred when he rescinded defendant's plea agreement and reinstated the charges against her since the State breached the plea agreement. Although the particular funds seized were no longer available, the State was capable of specific performance of the terms of the plea agreement. Therefore, we reinstate the plea agreement. In addition, we find that the State must return to defendant an amount equal to the amount of funds seized, pursuant to the plea agreement. We vacate the judgment and reverse the order.

Vacated in part and reversed in part.

Judges McGEE and HUNTER, Robert C. concur